1    been doing there?

2              JUROR WEEKLEY:   The last four years.

3              MR. SVIKIS:   The last four years?

4              JUROR WEEKLEY:   Yes.

5              MR. SVIKIS:   Okay.  Being in that store did you

6    ever hear about this particular case—a crime that took place

7    in that store?

8              JUROR WEEKLEY:   No, I didn't.

9              MR. SVIKIS:   Okay.  Do you have any particular gun

10   knowledge?  If I say .22 or .38 does that mean anything to

11   you?

12             JUROR WEEKLEY:   No, M16 and .45 means—have meaning

13   to me.

14             MR. SVIKIS:   Okay.  Is that from the guard service

15   or military?

16             JUROR WEEKLEY:   It's from the military, yes, it is.

17             MR. SVIKIS:   What branch were you in?

18             JUROR WEEKLEY:   Army.

19             MR. SVIKIS:   They're not sending you back?

20             JUROR WEEKLEY:   No, they're not.

21             MR. SVIKIS:   How about your knowledge of

22   automobiles?  If I say a Ford LTD or a Gremlin, does that mean

23   anything to you?

24             JUROR WEEKLEY:   One's big; one's small.

25             MR. SVIKIS:   What was your job in the army?

101

1       JUROR WEEKLEY:   Medic.

2              MR. SVIKIS:   And is that what you do at—You know,

3       you fill out these little forms here.   Is that what you do at

4       Kalamazoo public schools?

5              JUROR WEEKLEY:   No, at Kalamazoo public schools I'm

6       a eighth grade social studies teacher.

7              MR. SVIKIS:   Okay.   Thank you.

8              JUROR WEEKLEY:   You're welcome.

9              THE COURT:   Any challenges for cause?

10             MR. BROWER:   No, your Honor.

11             MR. SVIKIS:   None for cause, your Honor.

12             THE COURT:   From now on, gentlemen, if you have a

13      cause—for cause challenge, you'll volunteer it.   I'm not going

14      to ask specifically.

15             MR. SVIKIS:   All right.

16             THE COURT:   Peremptories are with the defense.

17             MR. SVIKIS:   I'd like to thank and excuse

18      Mr. Connolly.

19             THE COURT:   Mr. Connolly, you're excused.

20             As I understand it, if you're excused from this

21      trial you're excused for this term of service; so—

22             JUROR CONNOLLY:   Thank you, your Honor.   Appreciate

23      it.

24             THE COURT:   You're welcome.

25             Does the state have any—

                              102

1          MR. BROWER:  Yes, your Honor, the—

2          THE COURT:  —at this time?  I'm thinking and doing

3    things, and it's not working out well.  Go ahead.

4          MR. BROWER:  No, your Honor.

5          THE COURT:  Well—You don't?

6          MR. BROWER:  No.

7          THE COURT:  Okay.  Fill seat 12, please.

8          THE CLERK:  Nancy Werkman for seat number 12.

9          THE COURT:  Ma'am, did you hear all of the

10   questions I asked and later those that both of the attorneys

11   asked?

12          JUROR WERKMAN:  Yes, I did.

13          THE COURT:  Have you ever sat on a jury, ma'am?

14          JUROR WERKMAN:  Yes, I have.

15          THE COURT:  Where at?

16          JUROR WERKMAN:  Here in Kalamazoo.

17          THE COURT:  What court, do you recall?

18          JUROR WERKMAN:  I don't remember what court it was.

19          THE COURT:  Do you recall whether it was circuit

20   court, district court—

21          JUROR WERKMAN:  Circuit.

22          THE COURT:  Do you recall whether it was a criminal

23   case or a civil?

24          JUROR WERKMAN:  It was a criminal case.

25          THE COURT:  Can you give us approximately how long

                              103

1    ago it was?

2         JUROR WERKMAN:   Approximately seven years ago.

3         THE COURT:   Was there anything about that

4    experience that you feel might cause you to favor one side or

5    the other in this case?

6         JUROR WERKMAN:   No, your Honor.

7         THE COURT:   Do you know either of the attorneys in

8    this case?

9         JUROR WERKMAN:   No, I don't.

10        THE COURT:   Do you know the defendant?

11        JUROR WERKMAN:   No, I don't.

12        THE COURT:   Did you recognize the names of any of

13   the witnesses?

14        JUROR WERKMAN:   No.

15        THE COURT:   Can you recall reading or hearing

16   anything about this case before you walked into this

17   courtroom?

18        JUROR WERKMAN:   A long, long time ago, yes.

19        THE COURT:   You do recall?

20        JUROR WERKMAN:   I read something, yes.

21        THE COURT:   Do you have any specific recollections

22   as to what you may have read or heard, other than something

23   happened?

24        JUROR WERKMAN:   No.

25        THE COURT:   Could—Let's say during the trial

104

1    something tweaks your memory and you recall, oh, you know, I

2    read something about that or I heard something on TV or the

3    radio, and it's not the same as what they're saying here.  Do

4    you understand that what radio or TV or the news media may

5    have said about the case is not evidence; do you understand

6    that?

7              JUROR WERKMAN:    Yes.

8              THE COURT:    Do you understand that you must decide

9    this case on what you see and hear in this courtroom and only

10   that?

11             JUROR WERKMAN:    Yes, I do.

12             THE COURT:    Do you have any problems about the

13   principles that will guide the jury in respect to evaluating

14   the testimony of law enforcement officers?

15             JUROR WERKMAN:    . . . (inaudible)

16             THE COURT:    Would you have any problem in accepting

17   the principles regarding the presumption of innocence, the

18   burden of proof, and the requirement that guilt be proven

19   beyond a reasonable doubt in order to establish a conviction?

20             JUROR WERKMAN:    No.

21             THE COURT:    Would you follow all of those rules,

22   and can you?

23             JUROR WERKMAN:    Yes.

24             THE COURT:    Is there anything about the—just the

25   nature of what this case is about that would be such that you

105

1    could not be fair and impartial?

2              JUROR WERKMAN:  No, sir.

3              THE COURT:  Can you think of anything at all based

4    on anything I've said here today or either of the attorneys

5    that would affect you being fair and impartial?

6              JUROR WERKMAN:  No, I believe everybody should have

7    a fair trial.

8              THE COURT:  Mr. Brower?

9              MR. BROWER:  Ma'am, other than the specific

10   questions the judge asked, were there any other questions that

11   were asked of the other prospective jurors that you thought,

12   oh, yeah, I would have an answer to that; or, no, I don't

13   think exactly that way?  Anything that came to mind during any

14   of the questions that—

15             JUROR WERKMAN:  No, I do not think so.

16             MR. BROWER:  All right.

17         I'm going to ask some questions about lifestyle and

18   maybe something that's dramatically different than what your

19   own is or that you're used to or that you would accept and

20   maybe are—have some pretty strong feelings about that kind of

21   a lifestyle.  Would that be something that you would be able

22   to set aside in evaluating this case and listening to the

23   evidence?

24             JUROR WERKMAN:  Yes.

25             MR. BROWER:  Even if you heard things about a

1  lifestyle of the victim of a crime, would you be able to set

2  that aside and evaluate the evidence without regard to that?

3          JUROR WERKMAN:   Yes.

4          MR. BROWER:   There was some testimony [sic] about

5  burden of proof and that it applies to every crime that's

6  charged in this county or anywhere in this state.  That's not

7  a—And it's the burden of proof—proof beyond a reasonable

8  doubt.  Do you think that's okay?  Whether it's a malicious

9  destruction of a mailbox or a murder case, do you think that's

10  okay that there's the same burden of proof there?

11          JUROR WERKMAN:   Yes.

12          MR. BROWER:   Would you be inclined to hold me to a

13  higher burden, though, just because it's a murder?

14          JUROR WERKMAN:   Just because it's?

15          MR. BROWER:   It's a murder case?

16          JUROR WERKMAN:   Oh, no.

17          MR. BROWER:   Thank you.

18          THE COURT:   Mr. Svikis

19          MR. SVIKIS:   Thank you.

20          Ms. Werkman, do you have any family members or

21  relatives in—in law enforcement?

22          JUROR WERKMAN:   No.

23          MR. SVIKIS:   Do you have any particular gun

24  knowledge?

25          JUROR WERKMAN:   Yes.  I think when I was a child I

1    used to shoot a .22 with my father—

2              MR. SVIKIS:   Okay.

3              JUROR WERKMAN:   —on the shooting range.

4              MR. SVIKIS:   I have no further questions.

5              THE COURT:   Mr. Brower, any challenges—peremptory

6    challenges?

7              MR. BROWER:   Your Honor, the People would thank and

8    excuse juror in seat one [sic], Mr. Aukes.   Excuse me.   In

9    seat three.

10             THE COURT:   Okay.   Mr. Aukes, you're excused.

11   Thank you for coming here today.

12             Do you have any at this time, Mr. Svikis?

13             MR. SVIKIS:   I do not, your Honor.

14             THE COURT:   Seat three, please.

15             THE CLERK:   Kerri Carpenter for seat number three.

16             THE COURT:

17             JUROR CARPENTER:   Ma'am, did you hear all the

18   questions we've asked?

19             JUROR CARPENTER:   Yes.

20             THE COURT:   Are you having a problem health-wise

21   physically?   You look like you're uncomfortable.

22             JUROR CARPENTER:   Yeah.

23             THE COURT:   But you didn't come up and ask to be

24   excused.

25             JUROR CARPENTER:   . . . (inaudible)

                            108

1      THE COURT:   Pardon?

2      JUROR CARPENTER:   . . . (inaudible)

3      THE COURT:   Well, okay.  You know how long we're

4    going to be here and what this case is about.  Is your

5    condition—Do you think it's such that you can do that?

6      JUROR CARPENTER:   I'm not sure.  . . . (inaudible)

7      THE COURT:   You know, I got to give you credit.

8    Because some people, they're like about three days pregnant

9    and want to get excused and you don't say anything to me.

10      I'm going to excuse you unless you really want to

11    sit.  Most people aren't that dedicated.

12      Thank you.

13      JUROR CARPENTER:   Thank you.

14      THE COURT:   You're to be complimented.

15      That's for cause, and not just because.  There's a

16    reason.

17      Let's fill that seat.  Go ahead.

18      THE CLERK:   The court calls Pamela Bacon for seat

19    number three.

20      THE COURT:   Ma'am, did you hear all the questions

21    we've asked to this point?

22      JUROR BACON:   Yes.

23      THE COURT:   Do you know either of the attorneys or

24    the defendant?

25      JUROR BACON:   . . . (inaudible)

1        THE COURT:    Did you recognize the names of any of

2    the witnesses?

3        JUROR BACON:    No.

4        THE COURT:    Do you recall reading or hearing

5    anything about this case before you got here today?

6        JUROR BACON:    . . . (inaudible)

7        THE COURT:    Have you ever sat on a jury, ma'am?

8        JUROR BACON:    . . . (inaudible)

9        THE COURT:    Did you hear me explain the principles

10   regarding the presumption of innocence, the burden of proof,

11   and proof of guilt beyond a reasonable doubt?

12       JUROR BACON:    Yes.

13       THE COURT:    Would you have any difficulty in

14   being—or following rules if you were on the jury?

15       JUROR BACON:    I don't think so.

16       THE COURT:    Did you hear me explain the fact that

17   law enforcement officers' testimony isn't entitled to any more

18   weight or credit than somebody with some other occupation?

19       JUROR BACON:    Yes, I . . . (inaudible)

20       THE COURT:    Any difficulty accepting that?

21       JUROR BACON:    . . . (inaudible)

22       THE COURT:    Is there anything about the nature of

23   this case that you feel is such that you could not be fair or

24   impartial?

25       JUROR BACON:    . . . (inaudible)

1          THE COURT:    Can you think of anything at all based
2     on specific questions I've asked or those questions that
3     either of the lawyers have asked that might be important for
4     us to know about about your background or experience?
5          JUROR BACON:    The only question I heard them ask is
6     do you know anybody that's a lawyer or a public defender.
7          THE COURT:    Do you?
8          JUROR BACON:    And I have a son in law school.
9          THE COURT:    You have a son in law school.  Would
10    that affect you being fair here?
11         JUROR BACON:    I don't think so, but I thought I
12    should tell you that.
13         THE COURT:    That's great.  Just don't ask him any
14    questions about the law.  Whatever the law is that you need to
15    know about this case will come here—from here.  Okay?
16         JUROR BACON:    He lives in New York so
17    . . . (inaudible)
18         THE COURT:    There's phones, though.
19    . . . (inaudible)
20         Okay.  Mr. Brower?
21         MR. BROWER:    Ma'am, are you still working at
22    Pfizer?
23         JUROR BACON:    Yes.
24         MR. BROWER:    As is often the case with
25    Kalamazoo County jurors, there frequently are a number of

                              111

1   Pfizer employees in the jury panel.  Do you know any other

2   people from Pfizer here on this panel or out in the gallery?

3                   JUROR BACON:    No.

4                   MR. BROWER:    The proof beyond a reasonable doubt

5   standard in any criminal case, is that something you would be

6   reluctant to follow because you think that's just—I have to be

7   absolutely certain before I could ever return a verdict of

8   guilty in a criminal case?  Do you feel that?

9                   JUROR BACON:    . . . (inaudible) I'm not sure—

10                  MR. BROWER:    Okay.

11                  JUROR BACON:    —I understood what you said.

12                  MR. BROWER:    Beyond a reasonable doubt is something

13  less than absolute certainty 100 percent; do you understand

14  that?

15                  JUROR BACON:    . . . (inaudible)

16                  MR. BROWER:    All right.  Beyond a reasonable doubt

17  doesn't mean beyond any doubt whatsoever.

18                  JUROR BACON:    Correct.

19                  MR. BROWER:    Okay.  You're not a witness so likely

20  the only—In most instances the only way that you would be

21  100 percent certain is if you witnessed it with your own eyes,

22  correct?

23                  JUROR BACON:    That's correct.

24                  MR. BROWER:    So that really would be an impossible

25  burden for me then—Wouldn't it?—if I had to prove it to you

                                 112

1    beyond any doubt whatsoever?

2                    JUROR BACON:   That's correct.

3                    MR. BROWER:   You wouldn't hold me to that standard?

4                    JUROR BACON:   . . . (inaudible)

5                    MR. BROWER:   All right.   Thank you.

6                    THE COURT:   Mr. Svikis?

7                    MR. SVIKIS:   I don't have any questions of this

8    witness.

9                    THE COURT:   Peremptories are with you, Mr.—Wait.

10   No.   They're with—I—Yeah, they're with Mr. Svikis.

11                   MR. SVIKIS:   Thank you.

12                   I'd like to thank and excuse juror number 11,

13   Ms. Solberg.

14                   THE COURT:   Okay.   You're excused, ma'am.   Thank

15   you.

16                   Do you have any at this time, Mr. Brower?

17                   MR. BROWER:   The People would pass, your Honor.

18                   THE COURT:   Okay.   Fill seat 11, please.

19                   THE CLERK:   The court calls Michael Timpe for

20   seat 11.

21                   Is that pronounced correctly?

22                   JUROR TIMPE:   Yes, it is.

23                   THE COURT:   Sir, did you hear all the questions

24   asked up to this point?

25                   JUROR TIMPE:   Yes, I did.

                              113

1    THE COURT:    Do you know either of the lawyers, sir?

2    JUROR TIMPE:    No, I did not.

3    THE COURT:    Do you know the defendant?

4    JUROR TIMPE:    No, I did not.

5    THE COURT:    Did you recognize the names of any of

6    the witnesses?

7    JUROR TIMPE:    No, I did not.

8    THE COURT:    Do you recall reading or hearing

9    anything about this matter?

10    JUROR TIMPE:    Yes, I have.

11    THE COURT:    How recently?

12    JUROR TIMPE:    The last time it appeared in the

13    *Gazette*.    I'm aware that it was—I don't know, the last couple

14    months, I'm guessing.

15    THE COURT:    Do you understand that you must make

16    your decision about this case not on what you may have read in

17    the newspaper or heard in—on radio or TV but what you hear and

18    see in this courtroom and only that?    Do you understand that?

19    JUROR TIMPE:    Yes, I understand.

20    THE COURT:    Could you put aside anything that you

21    may have read or heard at anytime about this case and make

22    your decision only on what's been presented here in the

23    courtroom?

24    JUROR TIMPE:    I remember that I read something.    I

25    don't remember what I read.

114

1    THE COURT: It may come back to you, and I just
2    want you to understand—That often happens—at least it happens
3    to me. But what's important is not—not what the news media
4    reported but what comes out of the mouths of the witnesses and
5    the evidence that's offered and received; do you understand
6    that?
7    JUROR TIMPE: I understand.
8    THE COURT: Have you ever been on a jury?
9    JUROR TIMPE: Yes.
10   THE COURT: How long ago?
11   JUROR TIMPE: Probably more than ten years.
12   THE COURT: Was it here in this county?
13   JUROR TIMPE: It was federal district court. It
14   was a criminal case. I believe it was some kind of a fraud
15   case.
16   THE COURT: Here in Kalamazoo, or did you hear it
17   in Grand Rapids?
18   JUROR TIMPE: Judge Enslen.
19   THE COURT: I'm not sure that he always sits here
20   in Kalamazoo.
21   JUROR TIMPE: It was in Kalamazoo.
22   THE COURT: Okay.
23   JUROR TIMPE: . . . (inaudible)
24   THE COURT: I guess it really doesn't matter.
25   Federal court's federal court.

115

1          Is there anything about that that you feel might
2     cause you to favor or disfavor one side or the other?
3               JUROR TIMPE:   No.
4               THE COURT:   You understand that law enforcement
5     officers' testimony is not entitled to any more weight or
6     credit than someone with some other occupation or profession?
7               JUROR TIMPE:   Yes, I understand.
8               THE COURT:   Do you have any problem accepting that?
9               JUROR TIMPE:   No, sir.
10              THE COURT:   Do you have any problems accepting the
11    principles regarding the burden of proof, proof of guilt
12    beyond a reasonable doubt, and the presumption of innocence?
13              JUROR TIMPE:   No, I do not.
14              THE COURT:   Can you think of anything at all based
15    on anything I've said specifically here today or either of the
16    lawyers that might be important for us to know about your
17    background or experiences before you—
18              JUROR TIMPE:   I can't think of anything.
19              THE COURT:   Anything about the nature of this case
20    that's such that you couldn't be fair?
21              JUROR TIMPE:   No, sir.
22              Mr. Brower?
23              MR. BROWER:   No questions, your Honor.
24              THE COURT:   Mr. Svikis?
25              MR. SVIKIS:   Thank you.

116

1     Mr. Tempe, are you familiar with the location on

2  Stadium Drive where this is alleged to have occurred?

3     JUROR TIMPE:  Yes, I am.

4     MR. SVIKIS:  Have you ever been in that store?

5     JUROR TIMPE:  Years ago.

6     MR. SVIKIS:  You drive by it now or not

7     JUROR TIMPE:  I drive by it quite often.  I work

8  behind DeNooyer's.

9     MR. SVIKIS:  And what's the name of the place

10  behind DeNooyer's that you work?

11     JUROR TIMPE:  Micro Vane.  It's a software house.

12     MR. SVIKIS:  Okay.

13     JUROR TIMPE:  It's in the Venture Park industrial

14  complex . . . (inaudible)

15     MR. SVIKIS:  Any family members in law enforcement?

16     JUROR TIMPE:  No, sir.

17     MR. SVIKIS:  Any family members as attorneys?

18     JUROR TIMPE:  No, sir.

19     MR. SVIKIS:  I have no further questions.

20     THE COURT:  Any peremptory challenges, Mr. Brower?

21     JUROR TIMPE:  Yes, your Honor.  The People would

22  thank and excuse Ms. Baker in seat ten.

23     THE COURT:  All right.  Ms. Baker, you're excused.

24  Thank you for coming today.

25     Do you have any you wish to use at this time,

117

1     Mr. Svikis?

2          MR. SVIKIS:  No, your Honor.

3          THE COURT:  The court calls Rand Koetje for seat

4     number ten.

5          Sir, how do you pronounce that?

6          JUROR KOETJE:  Koetje.

7          JUROR KOETJE:  Koetje.  All right.

8          MR. SVIKIS:  Is that a C or a K?

9          THE CLERK:  K.

10         THE COURT:  K.  It's probably K-o-e-t-j-e.

11         Right?

12         THE CLERK:  Yes.

13         THE COURT:  Mr. Koetje, did you hear all the

14    questions we've asked up to this point?

15         JUROR KOETJE:  Yes, your Honor.

16         THE COURT:  Do you know either of the attorneys

17    here?

18         JUROR KOETJE:  No.

19         THE COURT:  Do you know the defendant?

20         JUROR KOETJE:  . . . (inaudible)

21         THE COURT:  Did you recognize the names of any of

22    the witnesses?

23         JUROR KOETJE:  No.

24         THE COURT:  Can you recall reading or hearing

25    anything about this case?

1    JUROR KOETJE:   . . . (inaudible)

2    THE COURT:   Have you ever sat on a jury, sir?

3    JUROR KOETJE:   Yes.

4    THE COURT:   How long ago?

5    JUROR KOETJE:   . . . (inaudible) years ago.

6    THE COURT:   Was it—Do you recall where, sir?

7    JUROR KOETJE:   . . . (inaudible)

8    THE COURT:   Was it circuit or some other court?

9    JUROR KOETJE:   It was circuit.

10   THE COURT:   Was it a civil or a criminal case?

11   JUROR KOETJE:   Civil.

12   THE COURT:   Do you think anything—there was

13   anything about that experience that you couldn't be fair and

14   impartial here?

15   JUROR KOETJE:   No.

16   THE COURT:   Did you hear me explain the rule

17   regarding the evaluation of police officer testimony?

18   JUROR KOETJE:   Yes, sir.

19   THE COURT:   Would you have any difficulty in acting

20   that rule and following it?

21   JUROR KOETJE:   No.

22   THE COURT:   Did you also hear me explain the

23   principles and rules regarding the presumption of innocence,

24   the burden of proof, and proof beyond a reasonable doubt in a

25   criminal matter?

1        JUROR KOETJE:   No.

2        THE COURT:   Again, my question is could you accept

3   those principles and follow them if you were on this jury?

4        JUROR KOETJE:   Yes.

5        THE COURT:   Is there anything about the nature of

6   this case that's such that you could not be fair?

7        JUROR KOETJE:   No.

8        THE COURT:   Can you think of anything at all based

9   on other specific questions that have been asked by either of

10  the attorneys or myself that might be important for us to know

11  about your background or experiences before it's determined

12  whether you sit on this jury?

13       JUROR KOETJE:   No.

14       THE COURT:   Mr. Brower?

15       MR. BROWER:   Good afternoon, sir.

16       I noticed from your questionnaire that you were a

17  witness in a murder case sometime—Is that accurate?—some years

18  ago?

19       JUROR KOETJE:    .  .  . (inaudible)

20       MR. BROWER:   And how many years ago?

21       JUROR KOETJE:   I'm sorry.

22       MR. BROWER:   Pardon?

23       JUROR KOETJE:   I forgot that.

24       MR. BROWER:    .  .  . (inaudible)

25       JUROR KOETJE:   That was probably 25—

1     MR. BROWER:   Okay.

2          JUROR KOETJE:   —years ago, something like that.

3          MR. BROWER:   All right.  Was that—Did it involve a

4     victim that was close to you?

5          JUROR KOETJE:   I knew the gentleman.

6          MR. BROWER:   You are obviously well aware of the

7     fact that this involves an allegation of murder as well—this

8     case?

9          JUROR KOETJE:   Yeah.

10         MR. BROWER:   Would your association or familiarity

11    with another homicide victim—even though many years ago—is

12    that likely to bring back emotions or feelings such that you

13    would have difficult sitting fairly and impartially in a

14    matter—

15         JUROR KOETJE:   No.

16         MR. BROWER:   —like this?  No.

17         You heard the discussions regarding circumstantial

18    evidence, yes?  Is that something that you are willing to

19    consider?  Circumstantial evidence—maybe circumstantial

20    alone—in determining innocence or—Excuse me.—whether someone

21    is guilty or guilty?

22         JUROR KOETJE:   Yeah.

23         MR. BROWER:   Whether or not there's forensic

24    evidence would not be a determining factor for you?

25         JUROR KOETJE:   No.

121

1          MR. BROWER:   Is there any reason that has been

2     asked before or maybe some reason that was not inquired about

3     that you simply don't want to sit in this kind of case during

4     this time period?  Any good reason, any not so good reason?

5          JUROR KOETJE:   No.

6          MR. BROWER:   Thank you.

7          THE COURT:   Mr. Svikis?

8          MR. SVIKIS:   Thank you.

9          Mr. Koetje, in your slip here—jury

10    questionnaire—that you prepared, it says witness in a homicide

11    case.  Could you tell me more about that?  Was that a case

12    that was—that went to trial and—

13         JUROR KOETJE:   Yes.

14         MR. SVIKIS:   What case was that?

15         JUROR KOETJE:   William . . . (inaudible)

16         MR. SVIKIS:   Okay.

17         JUROR KOETJE:    . . . (inaudible)

18         MR. SVIKIS:   And you testified for the prosecution

19    or defense or—

20         JUROR KOETJE:    The prosecution.

21         MR. SVIKIS:   And you knew the deceased or the

22    defendant?

23         JUROR KOETJE:    I knew the defendant.

24         MR. SVIKIS:   Okay.  Did you actually witness the

25    crime?

122

1        JUROR KOETJE:   No.

2        MR. SVIKIS:   I have no further questions.

3        THE COURT:   I believe the peremptories are with

4    you, Mr. Svikis.

5        MR. SVIKIS:   I'd like to thank and excuse

6    Mr. Koetje.

7        THE COURT:   Mr. Koetje, you're excused.   Thank you

8    for coming here today.

9        Do you have any at this time, Mr. Brower?

10       MR. BROWER:   No, your Honor.

11       THE COURT:   Seat ten.

12       THE CLERK:   John McKeown—Is that how it's

13   pronounced?—

14       JUROR MCKEOWN:   McKeown.

15       THE CLERK:   —seat number ten.

16       THE COURT:   Mr. McKeown, did you hear all the

17   questions asked?

18       JUROR MCKEOWN:   Yes, sir.

19       THE COURT:   Am I pronouncing your name correctly?

20       JUROR MCKEOWN:   McKeown.

21       THE COURT:   McKeown.   Okay.

22       Do you know either of the attorneys, Mr. McKeown?

23       JUROR MCKEOWN:   No.

24       THE COURT:   Do you know the defendant?

25       JUROR MCKEOWN:   No, sir.

123

1        THE COURT:   Do you recall reading or hearing

2   anything about this matter?

3        JUROR MCKEOWN:   . . . (inaudible)

4        THE COURT:   Have you ever sat on a jury, sir?

5        JUROR MCKEOWN:   . . . (inaudible)

6        THE COURT:   Did you hear me explain the principles

7   regarding the presumption of innocence, the burden of proof,

8   and proof of guilt beyond a reasonable doubt?

9        JUROR MCKEOWN:   Yes.

10        THE COURT:   Would you have any difficulty in

11   accepting those principles and applying them if you're on this

12   jury?

13        JUROR MCKEOWN:   No.

14        THE COURT:   Did you understand the rule that I

15   indicated applied regarding law enforcement officers'

16   testimony?  It's not entitled to any more or less weight just

17   because of what their job is.  Any problem with that?

18        JUROR MCKEOWN:   . . . (inaudible)

19        THE COURT:   Is there anything about the nature of

20   this case that's such that you couldn't be fair?

21        JUROR MCKEOWN:   No.

22        THE COURT:   Can you think of anything at all based

23   on other questions we've asked here today that might be

24   important for us to know about your background or experiences?

25        JUROR MCKEOWN:   . . . (inaudible)

124

(Tape No. B2004-033, 6-14-04, 15:06)

1   THE COURT:  Can you think of any reason why you

2   couldn't be fair?

3   JUROR MCKEOWN:  No.

4   THE COURT:  Mr. Brower?

5   MR. BROWER:  I have no questions, your Honor.

6   THE COURT:  Mr. Svikis.

7   MR. SVIKIS:  Mr. McKeown, have—do you have any

8   lawyers in the family?

9   JUROR MCKEOWN:  No.

10   MR. SVIKIS:  If I recall, you had requested to be

11   excused due to hardship.  Since that time you've left the

12   courtroom and come back over lunch.  Has anything else changed

13   that makes it any easier for you to—to be here than before?

14   JUROR MCKEOWN:  . . . (inaudible)

15   MR. SVIKIS:  Pardon?

16   JUROR MCKEOWN:  Not really.

17   MR. SVIKIS:  Okay.

18   I have no further questions.

19   (At 3:07 p.m., off record discussion between Court

20   and clerk)

21   Mr. Brower, the peremptories are with you.

22   MR. BROWER:  The People would thank and excuse

23   Mr. McKeown in seat ten.

24   THE COURT:  Okay.  Mr. McKeown, you're excused.

25   Do you have any at this time, Mr. Svikis?

125

1          MR. SVIKIS:   No, I do not, your Honor.

2          THE CLERK:   The court calls Jean Christie for seat

3    number ten.

4          (At 3:08 p.m., off record discussion)

5          THE COURT:   Yeah, probably the easiest thing is if

6    Mrs. Weekley—or is that Miss Weekley?—

7          JUROR WEEKLEY:   Miss.

8          THE COURT:   —goes to seat ten, and we'll seat this

9    lady in seat one.

10          JUROR CHRISTIE:   Thank you.

11          THE COURT:   What was her name again?

12          JUROR CHRISTIE:   Jean Christie.

13          THE COURT:   Okay.  Thank you.

14          JUROR CHRISTIE:   You're welcome.

15          THE COURT:   Okay.  Ms. Christie, did you hear all

16    the questions we've asked?

17          JUROR CHRISTIE:   Yes, I did.

18          THE COURT:   Do you know any of the lawyers—or

19    either of the lawyers here?

20          JUROR CHRISTIE:   No, I did not.

21          THE COURT:   Do you know the defendant?

22          JUROR CHRISTIE:   No.

23          THE COURT:   Did you recognize the names of any of

24    the witnesses?

25          JUROR CHRISTIE:   No.

126

1    THE COURT:   Can you recall reading or hearing
2    anything about this case?
3    JUROR CHRISTIE:   Not really, no.
4    THE COURT:   Do you think maybe you did—
5    JUROR CHRISTIE:   Well, maybe back in 1991; but I
6    don't really—
7    THE COURT:   You don't recall it right now?
8    JUROR CHRISTIE:   No.
9    THE COURT:   Do you understand that if you did and
10   all of a sudden your memory comes up with something—
11   JUROR CHRISTIE:   Little chance of that.
12   THE COURT:   Sort of like mine.
13   Okay.   But you understand you've got to decide the
14   case on what's said and done in this courtroom.   Okay.
15   Have you ever been on a jury?
16   JUROR CHRISTIE:   Yes.
17   THE COURT:   How many times?
18   JUROR CHRISTIE:   Twice, but over 20 years ago.
19   THE COURT:   Was it in Kalamazoo—this county?
20   JUROR CHRISTIE:   Yes.
21   THE COURT:   Circuit court—
22   JUROR CHRISTIE:   Yes.
23   THE COURT:   —or other court?
24   JUROR CHRISTIE:   Circuit.   One criminal, one civil.
25   THE COURT:   Okay.   So you've done both.

127

1          Anything about either of those experiences that you

2    feel might cause you to favor or disfavor one side—

3          JUROR CHRISTIE:    No.

4          THE COURT:   —or the other?

5          You heard me explain the principles regarding the

6    presumption of innocence, burden of proof, and proof of guilt

7    beyond a reasonable doubt?

8          JUROR CHRISTIE:    Yes.

9          THE COURT:   Could you accept those and apply them

10   if I—if you're on this jury?

11         JUROR CHRISTIE:    Absolutely.

12         THE COURT:   Any problem with what I told you the

13   rule was concerning police officers' testimony?

14         JUROR CHRISTIE:    No.

15         THE COURT:   Can you think of anything at all based

16   on what we've said here today and I haven't specifically

17   addressed with you as to why you couldn't be fair and

18   impartial?

19         JUROR CHRISTIE:    I can't see any problem.

20         THE COURT:   Okay.  Mr. Brower?

21         MR. BROWER:   Thank you, your Honor.

22         Ma'am, I missed it.  You sat on juries previously.

23   How long ago was that?

24         JUROR CHRISTIE:   Oh, over 20 years.

25         MR. BROWER:   All right.

                              128

1        JUROR CHRISTIE:    Twenty-three years.

2        MR. BROWER:    For both the civil and the criminal?

3        JUROR CHRISTIE:    Yes, it's when we used to

4 have—were called up for a month at a time.

5        MR. BROWER:    Oh.  All right.

6        There was a different burden of proof in determining

7 the civil case and in coming to a decision in the criminal

8 case—

9        JUROR CHRISTIE:    Right.

10       MR. BROWER:    —you recall that?

11       Did you have difficulty in making the transition

12 from evaluating it—the burden of proof in each of those kinds

13 of cases?

14       JUROR CHRISTIE:    Actually, no; because what it

15 comes down to is who do you believe and who do you see

16 credible.

17       MR. BROWER:    All right.  You don't think that it's

18 likely to cause you any difficulty now twenty-some years

19 later?

20       JUROR CHRISTIE:    I don't think so.

21       MR. BROWER:    All right.

22       Circumstantial evidence, if you believe the

23 testimony and believe that circumstantial evidence is truthful

24 and proves the elements of the crime beyond a reasonable doubt

25 would you be able to convict someone on that burden—based on

1   circumstantial evidence as the judge would instruct you that

2   you would—

3            JUROR CHRISTIE:   If I was convinced, yes.

4            MR. BROWER:   All right.   Without forensic evidence

5   or the need for forensic evidence?

6            JUROR CHRISTIE:   Right.

7            MR. BROWER:   Thank you.

8            MR. SVIKIS:   Ms. Christie, I note that you're a

9   retired teacher; is that correct?

10           JUROR CHRISTIE:   That's right.

11           MR. SVIKIS:   And what did you teach?

12           JUROR CHRISTIE:   Several things; but, basically,

13   English.

14           MR. SVIKIS:   Oops!

15           JUROR CHRISTIE:   Don't worry.

16           MR. SVIKIS:   In the trials that you saw on, do you

17   recall any different instructions about the burden of proof.

18   You mentioned that it comes down to who you believe, right?

19           JUROR CHRISTIE:   In many cases, I think it does

20   because you get conflicting testimony.

21           In the civil trial, we—on the jury—got to set

22   the—how much money the person got.

23           MR. SVIKIS:   I trust, then, by you mentioning that

24   that the plaintiff prevailed—the one who brought the suit?

25           JUROR CHRISTIE:   Yes, right.

1    MR. SVIKIS:   All right.  And then what was the

2  outcome in the criminal case; do you remember?

3    JUROR CHRISTIE:   How did we find—

4    MR. SVIKIS:   Yes.

5    JUROR CHRISTIE:   —the young man?

6    MR. SVIKIS:   Yeah.

7    JUROR CHRISTIE:   Guilty.

8    MR. SVIKIS:   Were you the foreperson at all or not?

9    JUROR CHRISTIE:   Yes.

10    MR. SVIKIS:   Okay.  Thank you.

11    I have no further questions.

12    THE COURT:   Okay.

13    I believe the peremptories are with you, Mr. Svikis.

14    MR. SVIKIS:   I'd like to thank and excuse

15  Ms. Christie.

16    THE COURT:   Ms. Christie, you're excused.

17    THE COURT:   Seat one.

18    Well, let's take a break.

19    (At 3:14 p.m., off record discussion between Court

20    and clerk)

21    Let's take about a ten-minute recess.

22    Please remember where you're seated.  Take those

23  same seats when we come back.

24    (At 3:14 p.m., court recessed)

25    (At 3:43 p.m., proceedings reconvened)

131

1     THE COURT:   Would you rather sit there,

2  Ms. Weekley, or at the end?  Which—Which one would you rather

3  sit in.

4     JUROR WEEKLEY:   One's fine.

5     THE COURT:   Okay.  You can switch back there.

6     All right.  Seat ten.

7     THE CLERK:   Judith Cronin for seat number ten.

8     THE COURT:   Ms. Cronin, did you hear all the

9  questions we've asked?

10     JUROR CRONIN:   Yes.

11     THE COURT:   All right.  Do you know either of the

12  lawyers, ma'am?

13     JUROR CRONIN:   No.

14     THE COURT:   Do you know the defendant?

15     JUROR CRONIN:   No.

16     THE COURT:   Did you recognize the names of any of

17  the witnesses?

18     JUROR CRONIN:   No.

19     THE COURT:   Can you recall reading or hearing

20  anything about this case?

21     JUROR CRONIN:   No.

22     THE COURT:   Have you ever sat on a jury, ma'am?

23     JUROR CRONIN:   No.

24     THE COURT:   Did you hear me explain the rules

25  regarding the presumption of innocence, the burden of proof,

132

1  and proof of guilt beyond a reasonable doubt?

2        JUROR CRONIN:   Yes.

3        THE COURT:   Would you have any difficulty in

4  accepting those principles and rules and applying them if

5  you're on the jury?

6        JUROR CRONIN:   No.

7        THE COURT:   Same with the issues regarding

8  evaluation of law enforcement officers?   Any problem with

9  following that rule?

10        JUROR CRONIN:   No.

11        THE COURT:   Is there anything about the nature of

12  this case that's such that you couldn't be fair?

13        JUROR CRONIN:   No.

14        THE COURT:   Can you think of anything based on

15  anything—specific questions I've asked or those that the

16  lawyers have asked—as to this matter that it might be

17  important for us to know?

18        JUROR CRONIN:   I have had interactions with police

19  officers.   I do not think it would affect my ability to make a

20  fair decision.

21        THE COURT:   Okay.   You say you had interaction.

22  Have—I take it sometimes have not been pleasant?

23        JUROR CRONIN:   Two years ago our house was

24  extensively robbed, and I had a number of Kalamazoo public

25  safety officers at my house probably for about six months

                              133

1   . . . (inaudible) in taking care of that incident.

2        THE COURT:   Would that affect how you would

3   assess—as long as it wasn't the same officers—what was said

4   and done in this trial?

5        JUROR CRONIN:   No.

6        THE COURT:   Can you think of any reason, then, why

7   you couldn't be fair?

8        JUROR CRONIN:   No.

9        THE COURT:   Mr. Brower?

10       MR. BROWER:   Ma'am, I wasn't sure, was that

11  something good that they were doing a lot of follow-up, or

12  they're making a pest of themselves and wish they'd just leave

13  us alone?

14       JUROR CRONIN:   It was a bad experience the—the

15  house being robbed . . . (inaudible).   Interaction with the

16  officers, it was acceptable . . . (inaudible)

17       MR. BROWER:   All right.

18       So as far as the—your feelings about police officers

19  or Kalamazoo Department of Public Safety, your feelings are

20  more about the crime that occurred than it is

21  . . . (inaudible) feelings about the officers or department?

22       JUROR CRONIN:   Yes.

23       MR. BROWER:   Thank you.

24       THE COURT:   Mr. Svikis?

25       MR. SVIKIS:   Thank you.

1      Ms. Cronin, did they ever apprehend anyone—catch

2  anyone?

3      JUROR CRONIN:   From the robbery of our house, no.

4      MR. SVIKIS:   Okay.  And you said that the police

5  kept coming back for six months.  Do you have any idea why it

6  was so long?

7      JUROR CRONIN:   I'm not sure it was exactly six

8  months, but there—as we found evidence, new things that were

9  missing—

10     MR. SVIKIS:   I see.

11     JUROR CRONIN:   — . . . (inaudible) reports—It

12 involved stealing one of our cars and bank account

13 information, also.  So they just took a long time to sort out

14 what was going on.  And then there was follow-up with one of

15 the detectives, who later closed it unresolved.

16     MR. SVIKIS:   Was it identify theft?  Is that what

17 you're saying, too, or—

18     JUROR CRONIN:   No.  They did use credit cards and

19 then—

20     MR. SVIKIS:   All right.

21     JUROR CRONIN:   —ATM cards.

22     MR. SVIKIS:   All right.  This is a—as you've

23 heard—a murder case and robbery.  Does that strike you any

24 way, or do you want to know more about it before you feel

25 uncomfortable or have no problem with the case?

1          JUROR CRONIN:   I don't think I really have a
2   problem.
3          MR. SVIKIS:   Okay.
4          Any lawyers in the family—
5          JUROR CRONIN:   No.
6          MR. SVIKIS:   —prosecutors?
7          JUROR CRONIN:   No.
8          MR. SVIKIS:   Are you at all familiar with the
9   location of what was then the Minute Mart, now the
10  Bronco Mart, on Stadium Drive by Rambling Road?
11         JUROR CRONIN:   I'm familiar with the area.  I was
12  thinking there was one closer to Dairy Queen that I have been
13  in, but Rambling Road is actually up further; so I don't
14  believe I've been in that store.
15         MR. SVIKIS:   Back in 1991 there were three—I'll
16  call them generically—Minute Marts that were owned by the same
17  individual.  I think one was on Westnedge, one was on
18  Sprinkle, one was on Stadium.  I'm talking about the one on
19  Stadium over by the Ford dealership and out that way.  Have
20  you ever been in that location?
21         JUROR CRONIN:   I do not believe so.
22         MR. SVIKIS:   Okay.  And you're—You're employed at
23  Bronson Hospital?
24         JUROR CRONIN:   Yes.
25         MR. SVIKIS:   And what—what are your duties there?

136

1  JUROR CRONIN:  I'm a registered nurse.

2  MR. SVIKIS:  You work in a particular area?

3  JUROR CRONIN:  . . . (inaudible)

4  MR. SVIKIS:  Thank you.

5  I have no further questions.

6  THE COURT:  I believe the peremptories are with

7  you, Mr. Brower.

8  MR. BROWER:  Your Honor, the People would thank and

9  excuse Ms. Mpofu in seat number seven.

10  THE COURT:  All right.  You're excused.  Thank you

11  for coming here today.

12  Do you have any at this time, Mr. Svikis?

13  MR. SVIKIS:  I'll pass, your Honor.

14  THE CLERK:  The court calls Gail Hoover for seat

15  number seven.

16  THE COURT:  Ma'am, did you hear all the questions

17  we've asked up to this point?

18  JUROR HOOVER:  Yes.

19  THE COURT:  Do you know either of the lawyers?

20  JUROR HOOVER:  . . . (inaudible)

21  THE COURT:  Do you know the defendant?

22  JUROR HOOVER:  . . . (inaudible)

23  THE COURT:  Do you know any of the people I named

24  who may be witnesses?

25  JUROR HOOVER:  . . . (inaudible)

1    THE COURT:   Do you recall whether or not you may

2    have read or heard something about this case?

3    JUROR HOOVER:   . . . (inaudible)

4    THE COURT:   Have you ever sat on a jury?

5    JUROR HOOVER:   Yes.

6    THE COURT:   And where at, sir—ma'am?

7    JUROR HOOVER:   It was here.

8    THE COURT:   Do you recall which court?

9    JUROR HOOVER:   I think it was circuit.

10   THE COURT:   Was it a civil case or a criminal case?

11   JUROR HOOVER:   Criminal.

12   THE COURT:   About how long ago would that have

13   been?

14   JUROR HOOVER:   Probably 20 years.

15   THE COURT:   Is there anything about that that you

16   feel that you could not be fair in this case?

17   JUROR HOOVER:   . . . (inaudible)

18   THE COURT:   Did you hear me explain the principles

19   regarding the presumption of innocence, the burden of proof,

20   and proof of guilt beyond a reasonable doubt?

21   JUROR HOOVER:   Yes, I did.

22   THE COURT:   Would you be able to accept those

23   principles and apply them if you're on this jury?

24   JUROR HOOVER:   Yes.

25   THE COURT:   Would you have any difficulty in

138

1   accepting the rules regarding the evaluation of police officer

2   testimony?

3        JUROR HOOVER:   . . . (inaudible)

4        THE COURT:   Can you think of anything at all based

5   on anything I've said or either of the lawyers today as to

6   whether or not you could be fair and impartial?

7        JUROR HOOVER:   . . . (inaudible)

8        THE COURT:   Can you think of any reason why you

9   couldn't be?

10       JUROR HOOVER:   . . . (inaudible)

11       THE COURT:   Okay.

12       Mr. Brower?

13       MR. BROWER:   Ma'am, does any small part of you say,

14  boy, I really wish there'd be forensic evidence before I would

15  have to decide this thing?

16       JUROR HOOVER:   No.

17       MR. BROWER:   The circumstantial

18  evidence—circumstantial evidence  . . . (inaudible) if it

19  proves the elements beyond a reasonable doubt; do you

20  understand that?

21       JUROR HOOVER:   Yes.

22       MR. BROWER:   You're okay with that?

23       JUROR HOOVER:   Yes.

24       MR. BROWER:   What about the fact that this is a

25  murder case as opposed to some minor misdemeanor?  Do you

1    think that there should be a different burden of proof just

2    based on the seriousness of the crimes?

3          JUROR HOOVER:    No.

4          MR. BROWER:    You understand that beyond a

5    reasonable doubt doesn't mean beyond any doubt?

6          JUROR HOOVER:    . . . (inaudible)

7          MR. BROWER:    You're not going to require something

8    more of me even though the judge advises you of some—of what

9    the standard is?

10         JUROR HOOVER:    . . . (inaudible)

11         THE COURT:    Mr. Svikis?

12         MR. SVIKIS:    Thank you.

13         Ms. Hoover, do you recall what the outcome of that

14   criminal case was 20 years ago?

15         JUROR HOOVER:    Yes.

16         MR. SVIKIS:    What was that?

17         JUROR HOOVER:    He pleaded guilty . . . (inaudible)

18         MR. SVIKIS:    Oh, he pled while you were—

19         JUROR HOOVER:    . . . (inaudible)

20         MR. SVIKIS:    Okay.  And that—They advised you of

21   that later; is that how it . . . (inaudible)

22         JUROR HOOVER:    . . . (inaudible)

23         MR. SVIKIS:    Okay.  And we've talked about this

24   Minute Market location on Stadium Drive by Rambling Road.  Are

25   you at all familiar with that location?

                              140

1    JUROR HOOVER:   I know where it is . . . (inaudible)

2    MR. SVIKIS:   Never been in.

3    Any lawyers or prosecutors in the family, close

4    friends?

5    JUROR HOOVER:   . . . (inaudible)

6    MR. SVIKIS:   Any police officers in the family,

7    close friends?

8    JUROR HOOVER:   . . . (inaudible)

9    MR. SVIKIS:   If I say to you .22 caliber and

10   .38 caliber or .357, does that mean anything to you?

11   JUROR HOOVER:   . . . (inaudible)

12   MR. SVIKIS:   I have no further questions.

13   THE COURT:   Peremptories are with you, Mr. Svikis.

14   MR. SVIKIS:   Thank you.

15   I'd like to thank and excuse Ms. Debottis.

16   THE COURT:   Okay.  Ms. Debottis, you're excused.

17   Thank you for coming here today.

18   Do you have any at this time, Mr. Brower?

19   MR. BROWER:   No, your Honor.

20   THE CLERK:   The court calls Patricia Glerum for

21   seat number 14.

22   MR. SVIKIS:   Could you give me that last name

23   again, please?

24   THE CLERK:   Glerum—G-l-e-r-u-m.

25   THE COURT:   Ma'am, did you hear all the questions

141

1    asked up to this point?

2             JUROR GLERUM:   . . . (inaudible)

3             THE COURT:   Do you know either of the lawyers?

4             JUROR GLERUM:   No, I don't.

5             THE COURT:   Do you know the defendant?

6             JUROR GLERUM:   No, I don't.

7             THE COURT:   Okay.  Do you recognize, or do you know

8    any of the people I named who may be called as witnesses?

9             JUROR GLERUM:   No . . . (inaudible)

10           THE COURT:   Have you read or heard anything about

11   this matter?

12           JUROR GLERUM:   It seems like I have, but I don't

13   think . . . (inaudible)

14           THE COURT:   Okay.  What's important is if you're on

15   the jury is to decide the case based on what's said and what

16   you hear and what evidence is presented in the courtroom; do

17   you understand that?

18           JUROR GLERUM:   . . . (inaudible)

19           THE COURT:   So that if for some reason your mind's

20   tweaked during the trial about something you read you've got

21   to disregard that.

22         Have you ever sat on a jury?

23         JUROR GLERUM:   Yes, I have.

24         THE COURT:   Okay.  Where at, ma'am?

25         JUROR GLERUM:   Here.

142

1    THE COURT:   Civil or criminal?

2    JUROR GLERUM:   Criminal.

3    THE COURT:   About how long ago?

4    JUROR GLERUM:   Eleven years ago.

5    THE COURT:   Anything about that case that you feel

6    might cause you to favor or disfavor one side or the other?

7    JUROR GLERUM:   No.

8    THE COURT:   You heard me tell the jury as to what

9    the rules are regarding evaluating police officer testimony.

10   Any problem with that?

11   JUROR GLERUM:   None.

12   THE COURT:   And you heard the principles regarding

13   the presumption of innocence, the burden of proof, and proof

14   of guilt beyond a reasonable doubt.  Any difficulty in

15   accepting and applying those principles?

16   JUROR GLERUM:   No, I don't . . . (inaudible)

17   THE COURT:   Can you think of any reason whatsoever

18   based on anything we've said here today as to why you couldn't

19   be fair?

20   JUROR GLERUM:   . . . (inaudible)

21   THE COURT:   Mr. Brower?

22   MR. BROWER:   No questions, your Honor.

23   THE COURT:   Mr. Svikis?

24   MR. SVIKIS:   Ms. Glerum, any police officers in the

25   family?

143

1      JUROR GLERUM:   Yes, sir.  A son.

2          MR. SVIKIS:   Okay.  What department?

3      JUROR GLERUM:   He just graduated from police

4  academy in December and just joined Richland Police Department

5  in May.

6          MR. SVIKIS:   Any other family members in the police

7  department?

8      JUROR GLERUM:   No.

9          MR. SVIKIS:   And how often do you see your son?

10     JUROR GLERUM:   Not very often.  He just got

11  married.

12         MR. SVIKIS:   Okay.  I didn't want to ask does he

13  live with you.  I wanted to work around that one.

14     The trial that you sat on 11 years ago, do you

15  recall what the outcome was?

16     JUROR GLERUM:   Guilty.

17         MR. SVIKIS:   All right.  Did you encourage your son

18  to be a police officer?

19     JUROR GLERUM:   No, we did not.

20         MR. SVIKIS:   Okay.

21     JUROR GLERUM:   Ever since 9-11 . . . (inaudible)

22         MR. SVIKIS:   You've heard enough bits and pieces—We

23  talked about murder, robbery, guns.  You've sat here for a

24  couple of hours.  Is this something you think you could do?

25     JUROR GLERUM:   Yes, I do.

                        144

1     MR. SVIKIS: Well, let me ask you this: do you have

2 a sense that if the police—the longer the police officers

3 spend on the case that the closer they may come to the truth?

4     JUROR GLERUM: No.

5     MR. SVIKIS: Not necessarily?

6     JUROR GLERUM: No.

7     MR. SVIKIS: You think they could get the wrong

8 person after 13 years?

9     JUROR GLERUM: Absolutely.

10     MR. SVIKIS: And let's say you sit on this jury and

11 a week from now you find that you've heard a lot of testimony

12 but the prosecution has the burden beyond a reasonable doubt

13 and you decide not guilty—just not enough evidence—and you run

14 into your son—which, of course, you would do—do you think

15 you'd have any kind of an unusual conversation with him?

16     JUROR GLERUM: Absolutely not.

17     MR. SVIKIS: Okay.  So you're not—You're not—What

18 you're telling me is you're not of the mind—I'll use my wife

19 as an example.—they wouldn't have arrested him if he didn't do

20 anything wrong?  You're not—Do you understand what I'm saying?

21     JUROR GLERUM: Yes, absolutely.

22     MR. SVIKIS: Okay.  Do you ever have a sense of

23 that?  I mean that they could arrest someone if he didn't do

24 anything wrong?

25     JUROR GLERUM: . . . (inaudible)

1        MR. SVIKIS:   Probable or possible?

2        JUROR GLERUM:   Possible.

3        MR. SVIKIS:   All right.  I have no further

4  questions.

5        THE COURT:   Mr. Brower, peremptories are with you.

6        MR. BROWER:   Your Honor, the People would thank and

7  excuse Ms. Dreier in seat number four.

8        THE COURT:   Ms. Dreier, you're excused.  Thank you

9  for coming here today.

10       Do you have any at this time, Mr. Svikis?

11       MR. SVIKIS:   I do not, your Honor.

12       THE COURT:   Fill seat four, please.

13       THE CLERK:   The court calls Robert Fletcher for

14  seat number four.

15       THE COURT:   Mr. Fletcher, did you hear all the

16  questions asked up to this point?

17       JUROR ROBERT FLETCHER:   I did, your Honor.

18       THE COURT:   Do you know either of the lawyers?

19       JUROR ROBERT FLETCHER:   I do.

20       THE COURT:   Who do you know?

21       JUROR ROBERT FLETCHER:   I know Mr. Svikis.

22       THE COURT:   How do you happen to know Mr. Svikis?

23       JUROR ROBERT FLETCHER:   Mr. Svikis represented my

24  ex-wife in my divorce trial.

25       THE COURT:   You waited all day to say that, didn't

1   you?

2           JUROR ROBERT FLETCHER:   . . . (inaudible)

3           THE COURT:   I said you waited all day to say that.

4   How long ago was that, sir?

5           JUROR ROBERT FLETCHER:   Oh, it had to be 12 years

6   ago, 13 years ago.

7           THE COURT:   Well, do you think that whatever

8   position Mr. Svikis takes in this—in this case that that would

9   affect how you would evaluate it?

10          JUROR ROBERT FLETCHER:   No, I don't think so.

11          THE COURT:   Did you actually have a trial, or was

12   it—

13          JUROR ROBERT FLETCHER:   I'm sorry?

14          THE COURT:   Was the divorce matter, was there—did

15   you go through a trial, or was it resolved before then through

16   negotiation?

17          JUROR ROBERT FLETCHER:   We negotiated.

18          THE COURT:   Do you think you could put that aside?

19          JUROR ROBERT FLETCHER:   I think so.

20          THE COURT:   Any question about it?

21          JUROR ROBERT FLETCHER:   No.

22          THE COURT:   Okay.

23          JUROR ROBERT FLETCHER:   I get along with my

24   wife—ex-wife better now than I ever did.  Of course, it took

25   all my money, my property, my pride.

1    THE COURT:   Be serious, though.

2    JUROR ROBERT FLETCHER:   I'm very serious.

3    THE COURT:   No, I mean this is serious.

4    JUROR ROBERT FLETCHER:   I would not have trouble

5  . . . (inaudible)

6    THE COURT:   Okay.  You think you could set that

7  aside and decide this matter based on what's—what the law is

8  and not anybody's personality?

9    JUROR ROBERT FLETCHER:   That's correct.

10    THE COURT:   Have you ever sat on a jury, sir?

11    JUROR ROBERT FLETCHER:   . . . (inaudible)

12    THE COURT:   Have you read or heard anything about

13  this case?

14    JUROR ROBERT FLETCHER:   . . . (inaudible)

15    THE COURT:   Have you read or heard anything about

16  the case?

17    JUROR ROBERT FLETCHER:   I have not.

18    THE COURT:   Did you recognize the names of any of

19  the witnesses?

20    JUROR ROBERT FLETCHER:   I did not.

21    THE COURT:   Did you hear me describe and explain

22  the principles regarding the presumption of innocence, the

23  burden of proof, and proof of guilt beyond a reasonable doubt?

24    JUROR ROBERT FLETCHER:   . . . (inaudible)

25    THE COURT:   Any difficulty in accepting those?

148

1    JUROR ROBERT FLETCHER:   . . . (inaudible)

2    THE COURT:   Same regarding the evaluation of law

3 enforcement officers' testimony, could you follow those rules?

4    JUROR ROBERT FLETCHER:   . . . (inaudible)

5    THE COURT:   Anything about the nature of this case

6 that's such that you couldn't be fair that you can think of?

7    JUROR ROBERT FLETCHER:   . . . (inaudible)

8    THE COURT:   Can you think of anything at all that

9 might be important for us to know about your background or

10 experiences before it's decided whether or not you sit on this

11 jury?

12    JUROR ROBERT FLETCHER:   I have two nieces that are

13 lawyers.

14    THE COURT:   Where do they practice?

15    JUROR ROBERT FLETCHER:   In Kalamazoo.

16    THE COURT:   What type of law do they—are they

17 involved in?

18    JUROR ROBERT FLETCHER:   One works for Borgess and

19 one works for State Farm.  I think they're corporate, although

20 they do litigation.

21    THE COURT:   They do get into court?

22    JUROR ROBERT FLETCHER:   One of them does.

23    THE COURT:   Anybody involved in law enforcement?

24    JUROR ROBERT FLETCHER:   . . . (inaudible)

25    THE COURT:   Mr. Brower?

(Tape No. B2004-033, 6-14-04, 16:06)

1      MR. BROWER:   Sir, did you have any difficulty

2  hearing the questions that were asked as you were sitting back

3  there?

4      JUROR ROBERT FLETCHER:   . . . (inaudible)

5      MR. BROWER:   Okay.  I know it's kind of a odd

6  question to ask, but do you know what you didn't hear?

7      JUROR ROBERT FLETCHER:   Do I know what I didn't

8  hear?

9      MR. BROWER:   Were there any parts that you had

10  difficulty?  I know there was—It appeared as though you were

11  having some difficulty hearing some of the questions.

12      JUROR ROBERT FLETCHER:   . . . (inaudible) a couple

13  times.  A couple people coughed . . . (inaudible)

14      MR. BROWER:   Okay.  So it's just a very momentary

15  thing and not a whole conversation that was lost.

16      To the best of your knowledge your nieces are not

17  involved in any criminal work at all?

18      JUROR ROBERT FLETCHER:   No.

19      MR. BROWER:   If they work for a corporation, they

20  probably don't have any involvement, period.

21      JUROR ROBERT FLETCHER:   Definitely not.

22      MR. BROWER:   All right.  Anything about any of the

23  conversations—any discussion questions/answers that, you know,

24  a red flag went up and said, oh, they probably want to know

25  about this?

150

1          JUROR ROBERT FLETCHER:    I know one former police

2    officer and one ex-convict.

3          MR. BROWER:    All right.   Knowing your experience or

4    contact or association with Mr. Svikis, if you were a criminal

5    defendant sitting at a table there would you want a person

6    with that kind of contact with the defense attorney sitting in

7    judgment on you?   Would you feel comfortable with that?

8          JUROR ROBERT FLETCHER:    I would feel comfortable;

9    but, you know, whether he would or not . . . (inaudible)

10         MR. BROWER:    Thank you.

11         THE COURT:    Mr. Svikis?

12         MR. SVIKIS:    Mr. Fletcher, I noticed you in the

13   back of the courtroom; and I was going to ask you, boy, you

14   look awful familiar.   But I guess you've—I guess you've laid

15   it out there.

16         You're a contractor now?

17         JUROR ROBERT FLETCHER:    Yeah, I work for—I do

18   contract work for Consumers Energy.

19         MR. SVIKIS:    Okay.   That's what that's for.   Okay.

20   I thought I recognized the—a different contractor and builder.

21   Thank you.

22         I have no further questions.

23         THE COURT:    Peremptories are with you, Mr. Svikis.

24         MR. SVIKIS:    I'd like to thank and excuse

25   Mr. Fletcher.

                                 151

1    THE COURT:   Do you have any at this time,
2  Mr. Brower?
3         MR. BROWER:   No, your Honor.
4         THE COURT:   Seat four.
5         THE CLERK:   The court calls Sally Lehrman for seat
6  number four.
7         (At 4:09 p.m., off record discussion between Court
8    and clerk)
9         MR. BROWER:   I'm sorry?  I didn't catch the last
10  name.
11        THE CLERK:   Lehrman—L-e-h-r.
12        THE COURT:   Ma'am, do you know—did you hear all the
13  questions?
14        JUROR LEHRMAN:   Yes.
15        THE COURT:   Do you know either of the lawyers?
16        JUROR LEHRMAN:   No.
17        THE COURT:   Did you—Do you know the defendant?
18        JUROR LEHRMAN:   . . . (inaudible)
19        THE COURT:   Did you recognize the names of any of
20  the witnesses?
21        JUROR LEHRMAN:   No.
22        THE COURT:   Do you recall if you've read or heard
23  anything about this case?
24        JUROR LEHRMAN:   Not that I recall.
25        THE COURT:   Have you ever sat on a jury?

1    JUROR LEHRMAN:   Yes, I have.

2    THE COURT:   And where was that?

3    JUROR LEHRMAN:   In circuit court.

4    THE COURT:   Here in Kalamazoo?

5    JUROR LEHRMAN:   Correct.

6    THE COURT:   Civil or criminal?

7    JUROR LEHRMAN:   Criminal.

8    THE COURT:   Anything about that that would cause

9    you to favor or disfavor one side or the other?

10   JUROR LEHRMAN:   No.

11   THE COURT:   Did you hear me explain the principles

12   regarding the presumption of innocence, the burden of proof,

13   and proof of guilt beyond a reasonable doubt?

14   JUROR LEHRMAN:   Yes, I did.

15   THE COURT:   Could you—Could you and would you

16   accept those principles and apply them if you're on this jury?

17   JUROR LEHRMAN:   . . . (inaudible)

18   THE COURT:   Would you have any difficulty accepting

19   the rules regarding the evaluation of law enforcement

20   testimony?

21   JUROR LEHRMAN:   . . . (inaudible)

22   THE COURT:   Is there anything about the nature of

23   this case that's such that you couldn't be fair?

24   JUROR LEHRMAN:   No, I don't think so.

25   THE COURT:   Can you think of anything at all that

153

1   might be important for the attorneys or I to know based on

2   other specific questions that we've asked?

3           JUROR LEHRMAN:   My husband is a convicted felon.

4           THE COURT:   Okay.  How long ago?

5           JUROR LEHRMAN:   Eleven years.

6           THE COURT:   Do you think that would affect how you

7   decide the case?

8           JUROR LEHRMAN:   I would hope not.

9           THE COURT:   I know, you know—And, you know, nobody

10  knows for sure absolutely; but do you—do you believe in any

11  way that it would, or could you set it aside and decide it on

12  what we've—what you're going to see and hear?

13          JUROR LEHRMAN:   . . . (inaudible)

14          THE COURT:   Mr. Brower, the questioning is with

15  you.

16          MR. BROWER:   Ma'am, your husband's legal problems,

17  what county was that in?

18          JUROR LEHRMAN:   Kalamazoo.

19          MR. BROWER:   Being a felony, it was prosecuted by

20  the prosecutor's office.

21          JUROR LEHRMAN:   Joe Skocelas.

22          MR. BROWER:   Okay.  Was that a plea or after a

23  trial?

24          JUROR LEHRMAN:   . . . (inaudible)

25          MR. BROWER:   Is that something that you believe

                              154

1   that was appropriate under the circumstances or you think that

2   he got a raw deal?

3           JUROR LEHRMAN:   I feel that he got a raw deal.

4           MR. BROWER:   All right.   I take it, then, that you

5   believe that the prosecutor's office contributed to that?

6           JUROR LEHRMAN:   Yes, I do.

7           MR. BROWER:   All right.   Thank you.

8           THE COURT:   Were you married to him at the time?

9           JUROR LEHRMAN:   . . . (inaudible)

10          THE COURT:   Okay.

11          Mr. Svikis?

12          MR. SVIKIS:   I have no questions, your Honor.

13          THE COURT:   Mr. Brower?

14          MR. BROWER:   Your Honor, the People would thank and

15  excuse Mrs. Lehrman—juror in seat four.

16          THE COURT:   You're excused, ma'am.   Thank you.

17          Do you have any at this time, Mr. Svikis?

18          MR. SVIKIS:   No, your Honor.

19          THE CLERK:   The court calls Christine Cunningham

20  for seat number four.

21          THE COURT:   Ma'am, did you hear all the questions

22  we've asked?

23          JUROR CUNNINGHAM:   Yes, I did.

24          THE COURT:   Do you know either of the lawyers?

25          JUROR CUNNINGHAM:   No, I do not.

155

1    THE COURT:   Do you know the defendant?

2    JUROR CUNNINGHAM:   No, I did not.

3    THE COURT:   You read—Did you recognize the names of

4    any witnesses?

5    JUROR CUNNINGHAM:   No, I did not.

6    THE COURT:   Have you read or heard anything about

7    this case that you can recall?

8    JUROR CUNNINGHAM:   No, I did not.

9    THE COURT:   Have you ever sat on a jury?

10   JUROR CUNNINGHAM:   No, I have not.

11   THE COURT:   Did you hear me explain the principles

12   regarding the presumption of innocence, the burden of proof,

13   and proof of guilt beyond a reasonable doubt?

14   JUROR CUNNINGHAM:   Yes, I have.

15   THE COURT:   Could you accept and apply those

16   principles if you're on this jury?

17   JUROR CUNNINGHAM:   Yes.

18   THE COURT:   Is there anything about the nature of

19   this case that's such that you couldn't be fair?

20   JUROR CUNNINGHAM:   No.

21   THE COURT:   Did you hear me explain the rules

22   regarding police officer testimony?

23   JUROR CUNNINGHAM:   Yes.

24   THE COURT:   Any problem with accepting that?

25   JUROR CUNNINGHAM:   No.

1    THE COURT:   Can you think of anything at all based
2  on other specific questions I've asked or those that the
3  lawyers have asked that might be important for us to know
4  about your background, experiences, or relationships?

5    JUROR CUNNINGHAM:   No.

6    THE COURT:   Can you think of any reason why you
7  couldn't be a fair juror?

8    JUROR CUNNINGHAM:   No.

9    THE COURT:   Mr. Brower?

10    MR. BROWER:   No questions.

11    THE COURT:   Mr. Svikis?

12    MR. SVIKIS:   I missed—Did the judge ask if there
13  were any police officers in your family?

14    JUROR CUNNINGHAM:   No.

15    MR. SVIKIS:   There aren't any?   Okay.

16    Lawyers?

17    JUROR CUNNINGHAM:   No.

18    MR. SVIKIS:   Are you familiar with the location
19  where this is supposed to have occurred on Stadium Drive?

20    JUROR CUNNINGHAM:   No.

21    MR. SVIKIS:   Okay.   And you work at a greenhouse?

22    JUROR CUNNINGHAM:   Yes.

23    MR. SVIKIS:   What's your job there?

24    JUROR CUNNINGHAM:   A little bit of everything.

25    MR. SVIKIS:   Okay.

157

1           I have no further questions.

2           THE COURT:   Peremptories are with you, Mr. Svikis.

3           MR. SVIKIS:   I'd like to excuse juror in seat 14,

4  Patricia Glerum.

5           THE COURT:   All right.   Ms. Glerum, you're excused.

6  Thank you for coming here today.

7           Do you have any at this time, Mr. Brower?

8           MR. BROWER:   No, your Honor.

9           THE COURT:   Seat 14.

10          THE CLERK:   The court calls Dorene Scheffers for

11 seat 14.

12          MR. BROWER:   She was excused.

13          THE CLERK:   Oh, okay, she was.   I'm sorry.

14          Kevin Bushouse for seat 14.

15          THE COURT:   Mr. Bushouse, did you hear all the

16 questions?

17          JUROR BUSHOUSE:   Yes, I did.

18          THE COURT:   Do you know either of the lawyers, sir?

19          JUROR BUSHOUSE:   No, I did not.

20          THE COURT:   Do you know the defendant?

21          JUROR BUSHOUSE:   No, I did not.

22          THE COURT:   Did you recognize, or do you know any

23 of the witnesses?

24          JUROR BUSHOUSE:   I recognized some of the last

25 names, but . . . (inaudible) I won't know until I see them.

                              158

1       THE COURT:   In other words, they had similar names?

2       JUROR BUSHOUSE:   Yeah, some last names sound very

3   familiar.

4       THE COURT:   Well, based on what you know right now

5   would you say they're—that any of those names that were

6   familiar to you that they would be somebody—if, in fact,

7   they're a witness—that the fact that you had this contact with

8   them would affect how you'd evaluate the testimony?

9       JUROR BUSHOUSE:   No, it would not.

10      THE COURT:   Have you ever been on a jury, sir?

11      JUROR BUSHOUSE:   Yes, I have.

12      THE COURT:   And where was that?

13      JUROR BUSHOUSE:   Kalamazoo.

14      THE COURT:   Was it here in circuit court, or was it

15  in district court or some other court?

16      JUROR BUSHOUSE:   It was here in circuit court.

17      THE COURT:   Was it a civil or a criminal case?

18      JUROR BUSHOUSE:   Criminal.

19      THE COURT:   Anything about that that you feel might

20  cause you to favor or disfavor one side or the other?

21      JUROR BUSHOUSE:   Not that I can think of.

22      THE COURT:   Did you hear me explain the principles

23  regarding the presumption of innocence, burden of proof, and

24  proof of guilt beyond a reasonable doubt?

25      JUROR BUSHOUSE:   Yes.

1    THE COURT:   Any difficulty accepting those and
2  applying them if you're on this jury?
3    JUROR BUSHOUSE:   I'm sorry?
4    THE COURT:   Could you accept those and apply them
5  if you're on this jury?
6    JUROR BUSHOUSE:   Yes, I can.
7    THE COURT:   Can you think of anything at all based
8  on questions that have been asked specifically by myself or
9  either of the lawyers that might be important for us to know
10  about your background or experiences before it's determined
11  whether you sit on this jury?
12    JUROR BUSHOUSE:   Not that I can think of.
13    THE COURT:   Can you think of any—Is there anything
14  about the nature of the case that's such you couldn't be fair?
15    JUROR BUSHOUSE:   No.
16    THE COURT:   Mr. Brower?
17    MR. BROWER:   Mr. Bushouse, from your questionnaire
18  I note that you had been a victim of a crime sometime ago; is
19  that correct?
20    JUROR BUSHOUSE:   Yes, sir.
21    MR. BROWER:   Was that here in Kalamazoo?
22    JUROR BUSHOUSE:   Yes, it was.
23    MR. BROWER:   Was that reported to the Kalamazoo
24  Department of Public Safety?
25    JUROR BUSHOUSE:   No, it was a county matter.   I

160

1 live in Richland.

2     MR. BROWER:   All right.

3     JUROR BUSHOUSE:   . . . (inaudible)

4     MR. BROWER:   Either Richland police or county

5 sheriff's department?

6     JUROR BUSHOUSE:   It was sheriff's department.

7     MR. BROWER:   Did that experience or that contact

8 with the sheriff's department leave you with any strong

9 feelings one way or the other about their work?

10     JUROR BUSHOUSE:   No.

11     MR. BROWER:   You had some other contact with police

12 agencies in a legal matter; is that correct?

13     JUROR BUSHOUSE:   Yes.

14     MR. BROWER:   Was that also in Kalamazoo County?

15     JUROR BUSHOUSE:   Yes, it was.

16     MR. BROWER:   By which department?

17     JUROR BUSHOUSE:   Township.

18     MR. BROWER:   Kalamazoo Township?

19     JUROR BUSHOUSE:   . . . (inaudible)

20     MR. BROWER:   Okay.  Regarding that incident, did

21 that leave you with a bitter taste; or would you say—

22     JUROR BUSHOUSE:   No.

23     MR. BROWER:   —that was appropriate under the

24 circumstances?

25     JUROR BUSHOUSE:   . . . (inaudible)

1        MR. BROWER:   All right.  Did you resolve that

2  matter?

3        JUROR BUSHOUSE:   Yes, it was . . . (inaudible)

4        MR. BROWER:   Was that prosecuted by the

5  prosecutor's office or by the township attorney; do you know?

6        JUROR BUSHOUSE:   It was . . . (inaudible)

7        MR. BROWER:   And, again, that didn't result in a

8  trial?  Everything was . . . (inaudible)

9        JUROR BUSHOUSE:   . . . (inaudible)

10        MR. BROWER:   Thank you.

11        THE COURT:   Mr. Svikis?

12        MR. SVIKIS:   You say on a jury in this—in this

13  court in a criminal matter?

14        JUROR BUSHOUSE:   . . . (inaudible)

15        MR. SVIKIS:   And about how long ago was that?

16        JUROR BUSHOUSE:   That was in '96 or '7.

17        MR. SVIKIS:   Do you recall what kind of a case it

18  was?

19        JUROR BUSHOUSE:   Yeah, it was a assault and battery

20  . . . (inaudible)

21        MR. SVIKIS:   And do you recall the outcome of that?

22        JUROR BUSHOUSE:   It was guilty.

23        MR. SVIKIS:   And were you the foreperson or not?

24        JUROR BUSHOUSE:   . . . (inaudible)

25        MR. SVIKIS:   I have no further questions.

                              162

1        THE COURT:  Peremptories are with you, Mr. Brower.

2        MR. BROWER:  People pass, your Honor.

3        THE COURT:  Mr. Svikis?

4        MR. SVIKIS:  I'd like to thank and excuse

5 Ms. Budnick in number eight.

6        THE COURT:  All right.  Ms. Budnick, you're

7 excused.

8        Go ahead.

9        THE CLERK:  The court calls David Horton for seat

10 number eight.

11        THE COURT:  Mr. Horton, did you hear all the

12 questions?

13        JUROR HORTON:  Yes, I did.

14        THE COURT:  Do you know either of the lawyers,

15 Mr. Horton?

16        JUROR HORTON:  No, I do not.

17        THE COURT:  Do you know the defendant?

18        JUROR HORTON:  No, I did not.

19        THE COURT:  Do you know any of the witnesses that I

20 named?

21        JUROR HORTON:  Craig Munson I believe you

22 mentioned.

23        MR. BROWER:  I'm sorry?  I didn't catch the name.

24        THE COURT:  Craig Manson?

25        JUROR HORTON:  . . . (inaudible)

1       MR. BROWER:   There's a Brett and a Bart Munson.

2       THE COURT:   Let me look.   I don't—I couldn't tell

3   you who I read off now.  Let's see.  A Brett Munson.

4       JUROR HORTON:   I'm sorry.  No, I do not.

5       THE COURT:   I don't think there was any other

6   Munson, was there?

7       MR. BROWER:   Bart Munson.

8       THE COURT:   Oh, there was a Bart Munson?  You're

9   right; there was.  There was a Brett and a Bart.

10       JUROR HORTON:   . . . (inaudible)

11       THE COURT:   Okay.  Did you read or hear anything

12   about this case, Mr.—

13       JUROR HORTON:   I do not remember reading or hearing

14   anything about this case.

15       THE COURT:   Okay.  Do you understand you have to

16   decide the case on what we—what's been—what will be presented

17   here?

18       JUROR HORTON:   Yes.

19       THE COURT:   Okay.  Have you ever sat on a jury?

20       JUROR HORTON:   I have not.

21       THE COURT:   Did you hear me explain the principles

22   regarding the presumption of innocence, the burden of proof,

23   and the proof of guilt beyond a reasonable doubt?

24       JUROR HORTON:   I did.

25       THE COURT:   Would you be able to accept and apply

                              164

1      those if you're on this jury?

2             JUROR HORTON:   I would.

3             THE COURT:   Did you hear me explain the principle

4      or the rules regarding evaluating law enforcement officers'

5      testimony?

6             JUROR HORTON:   Yes.

7             THE COURT:   Do you have any difficulty in accepting

8      that principle?

9             JUROR HORTON:   No, sir.

10            THE COURT:   Is there anything about the nature of

11     this case that's such that you couldn't be fair and impartial?

12            JUROR HORTON:   . . . (inaudible)

13            THE COURT:   Can you think of anything at all based

14     on other specific questions asked by myself or either of the

15     lawyers throughout this day that might be important for us to

16     know about your background or experience?

17            JUROR HORTON:   . . . (inaudible)

18            THE COURT:   Can you think of any reason why you

19     can't be a fair juror here?

20            JUROR HORTON:   . . . (inaudible)

21            THE COURT:   Mr. Brower?

22            MR. BROWER:   No questions, your Honor.

23            THE COURT:   Mr. Svikis?

24            MR. SVIKIS:   Thank you.

25            Mr. Horton, if I say .22 caliber, .38 caliber, or

1    .357, does that mean anything to you?

2              JUROR HORTON:    I know they're guns.

3              MR. SVIKIS:    All right.  Do you know the location

4    where this is alleged to have occurred on Stadium Drive and

5    Rambling Road?

6              JUROR HORTON:    I know where it's at, yes.

7              MR. SVIKIS:    Have you ever been in that location?

8              JUROR HORTON:    No, I haven't.

9              MR. SVIKIS:    Any family members in a police

10   department?

11             JUROR HORTON:    I have a son in the air national

12   guard and military police in Battle Creek.

13             And I have a daughter that's a corporate lawyer in

14   Detroit.

15             MR. SVIKIS:    Is that a unit that's been activated?

16             JUROR HORTON:    They were last year, yes.

17             MR. SVIKIS:    They're back now?

18             JUROR HORTON:    They are back.

19             MR. SVIKIS:    And his civilian job is what?

20             JUROR HORTON:    He's working at the base as of now.

21             MR. SVIKIS:    But he never worked as a civilian

22   police officer?

23             JUROR HORTON:    No, sir

24             MR. SVIKIS:    I have no further questions.

25             THE COURT:    Peremptories are you—with you,

                              166

1   Mr. Brower.

2          MR. BROWER:   People pass, your Honor.

3          THE COURT:   Mr. Svikis?

4          MR. SVIKIS:   Thank you.

5          I'd like to thank and excuse—I think it's

6   Ms. Fletcher in seat nine.

7          THE COURT:   All right.  Ms. Fletcher, you're

8   excused.

9          Seat nine.  Go ahead.

10          THE CLERK:   The court calls David Burnson for seat

11   nine.

12          THE COURT:   Mr. Burnson, did you hear all the

13   questions?

14          JUROR BURNSON:   Yes, sir.

15          THE COURT:   Do you know either of the lawyers?

16          JUROR BURNSON:   No, sir.

17          THE COURT:   Do you know the defendant?

18          JUROR BURNSON:   No, your Honor.

19          THE COURT:   Do you know any of the witnesses that I

20   named?

21          JUROR BURNSON:   . . . (inaudible)

22          THE COURT:   Can you recall if you've read or heard

23   anything about this?

24          JUROR BURNSON:   I read the account many years ago,

25   but I do not recall.

167

1    THE COURT:   If you happened to recall something

2 that you read, could you put that aside and decide this case

3 on what you see and hear in this courtroom?

4    JUROR BURNSON:   Yes, your Honor.

5    THE COURT:   Have you ever been on a jury?

6    JUROR BURNSON:   No.

7    THE COURT:   Is there anything about the nature of

8 this case that's such that you couldn't be fair?

9    JUROR BURNSON:   . . . (inaudible)

10    THE COURT:   Did you hear me explain the principles

11 regarding the presumption of innocence, the burden of proof,

12 and proof of guilt beyond a reasonable doubt?

13    JUROR BURNSON:   Yes, your Honor.

14    THE COURT:   Would you have any difficulty accepting

15 those and applying them here?

16    JUROR BURNSON:   . . . (inaudible)

17    THE COURT:   Did you hear me explain the rules that

18 regard—that relate to evaluating law enforcement's officers'

19 testimony, that it—that it shouldn't make any difference one

20 way or the other—

21    JUROR BURNSON:   Yes, your Honor.

22    THE COURT:   —what their job is?   Could you follow

23 that?

24    JUROR BURNSON:   . . . (inaudible)

25    THE COURT:   Can you think of anything at all based

168

1  on anything I've said here at anytime today or anything that

2  the lawyers have said anytime today that might be important

3  for us to know about your background or experience before you

4  sit on this jury?

5          JUROR BURNSON:   The only thing that I would have to

6  mention, my son is employed with the Kalamazoo public service.

7          THE COURT:   What's he do for them?

8          JUROR BURNSON:   He is—At the present time he's in

9  the dispatch center.

10          THE COURT:   Has he done anything other than

11  dispatch that you know of?

12          JUROR BURNSON:   He was on auxiliary police

13  department in Three Rivers, Michigan.

14          THE COURT:   Before that?

15          JUROR BURNSON:   Before that.

16          THE COURT:   And how he's in dispatch?

17          JUROR BURNSON:   . . . (inaudible)

18          THE COURT:   Are those sworn—I don't know.

19          JUROR BURNSON:   No, they are not.

20          THE COURT:   Okay.  He's like a civilian—

21          JUROR BURNSON:   That is correct.

22          THE COURT:   —employee of the police department—

23          JUROR BURNSON:   That is correct.

24          THE COURT:   —or of the—It's not even the police

25  department.  It's public safety department, I think.  Would

169

1  that affect how you'd evaluate the case?

2         JUROR BURNSON:   No, your Honor.

3         THE COURT:   Mr. Brower?

4         MR. BROWER:   No questions, your Honor.

5         THE COURT:   Mr. Svikis?

6         MR. SVIKIS:   Thank you.

7         Mr. Burnson, you filled out a questionnaire sometime

8  ago, and I'm having difficulty reading an answer to a question

9  that says, have you ever been an office holder for any state,

10 county, municipality or have you ever been a law enforcement

11 officer; and I can read member of—

12        JUROR BURNSON:   The Michigan County

13 . . . (inaudible) Commission.

14        MR. SVIKIS:   Okay.   That's for what county?

15        JUROR BURNSON:   It was for St. Joseph County.

16        MR. SVIKIS:   Okay.   But you're a resident of

17 Kalamazoo County today?

18        JUROR BURNSON:   At the present time, yes, sir.

19        MR. SVIKIS:   Does your son reside with you or not?

20        JUROR BURNSON:   No, sir.   He's married and a

21 separate residence.

22        MR. SVIKIS:   All right.   When was the last time you

23 spoke with him?

24        JUROR BURNSON:   Last Sunday.

25        MR. SVIKIS:   Okay.   Did he know you were coming

                              170

1    to—you were going to be on jury duty?

2           JUROR BURNSON:   No, sir, he didn't.

3           MR. SVIKIS:   Okay.

4           I have no further questions.

5           THE COURT:   Peremptories are with you, Mr. Brower.

6           MR. BROWER:   People would pass, your Honor.

7           THE COURT:   Mr. Svikis?

8           MR. SVIKIS:   I'd like to thank juror in seat

9    number 13, Ms. Meisch.

10          THE COURT:   Meisch?   Okay.

11          Thank you, ma'am, for coming this morning—or today.

12   We're past noon.

13          THE CLERK:   The court calls Carol Shupe for seat

14   number 13.

15          THE COURT:   Ma'am, did you hear all the questions?

16          JUROR SHUPE:   Yes, your Honor.

17          THE COURT:   Do you know either of the attorneys?

18          JUROR SHUPE:   No.

19          THE COURT:   Do you know the defendant?

20          JUROR SHUPE:   No.

21          THE COURT:   Did you recognize the names of any of

22   the witnesses?

23          JUROR SHUPE:   No.

24          THE COURT:   Do you recall whether or not you read

25   or heard anything about this case?

                           171

1    JUROR SHUPE:   Not that I recall.

2    THE COURT:   Have you ever sat on a jury?

3    JUROR SHUPE:   Yes.

4    THE COURT:   And where and how long ago?

5    JUROR SHUPE:   It was in Kalamazoo, and I don't
6    remember if it was district or circuit.  It was on Rose Street
7    at the police station.

8    THE COURT:   That's district.

9    JUROR SHUPE:   Okay.

10    THE COURT:   I—Well, I shouldn't—

11    THE CLERK:   Yes.

12    THE COURT:   —I shouldn't say that.  I'm not—It was
13    when I was last here, but that's been several years; so—

14    Okay.  Do you recall now if it was a criminal type
15    case or a civil case?

16    JUROR SHUPE:   It was criminal.

17    THE COURT:   Is there anything about that that you
18    feel might cause you to favor or disfavor one side or the
19    other?

20    JUROR SHUPE:   No, sir.

21    THE COURT:   Did you hear me explain the rules
22    regarding the evaluation of law enforcement officers'
23    testimony?

24    JUROR SHUPE:   Yes.

25    THE COURT:   Any difficulty in accepting that?

172

1    JUROR SHUPE:   No.

2    THE COURT:   Same with the principles regarding the

3    presumption of innocence, the burden of proof, and proof of

4    guilt beyond a reasonable doubt; could you—

5    JUROR SHUPE:   Yes.

6    THE COURT:   —accept all of those principles?

7    JUROR SHUPE:   Yes.

8    THE COURT:   Is there anything about the nature of

9    this case that's such that you couldn't be fair?

10   JUROR SHUPE:   No.

11   THE COURT:   Is there anything based on other

12   specific questions I've asked or the lawyers have asked that

13   might be important for us to know about your background or

14   experiences before it's determined whether you sit on the

15   jury?

16   JUROR SHUPE:   I had a cousin who was killed in a

17   bank robbery.  I was, I think, like pre-teenage years.

18   However, I don't feel that that would jeopardize my ability to

19   serve as a juror.

20   THE COURT:   Do you know now where that happened?

21   JUROR SHUPE:   That was in Richland.

22   THE COURT:   Oh, okay.  So it was in this county?

23   JUROR SHUPE:   Yes.

24   THE COURT:   But your—It's your recollection that

25   you were preteen at that point?

173

1           JUROR SHUPE:   Pardon me?

2           THE COURT:   Your recollection is that at the time

3   this occurred you were preteen?

4           JUROR SHUPE:   Yes.

5           THE COURT:   Before your teens?

6           JUROR SHUPE:   Yes.  Well, she was—She was 21 at the

7   time, and I believe she would be approximately 10 years older

8   than me; so—

9           THE COURT:   Okay.

10          JUROR SHUPE:   —I'm thinking I was around 11 years

11  old.

12          THE COURT:   So I would imagine there was comment in

13  your family about that?

14          JUROR SHUPE:   A great deal.

15          THE COURT:   Could you put that aside and decide

16  this case on what you see and hear in this courtroom?

17          JUROR SHUPE:   Yes.  The only thing that offends me

18  is that I kind of have a fear of guns, but I have no other

19  problems.

20          THE COURT:   I guess that's a good fear.  I think

21  everybody ought to fear guns.

22          Okay.  Mr. Brower?

23          MR. BROWER:   Ma'am, you discussed previously some

24  concerns you had regarding employment and projects that were

25  due.

174

1        JUROR SHUPE:   Uhm-hmm.

2        MR. BROWER:   If you aren't there to carry through

3 with that project and getting it done by the deadline, is that

4 work that won't get done; or is there somebody else to take

5 over?

6        JUROR SHUPE:   I think it would be a hardship for my

7 employer, but I—I would plan on probably going in in the

8 evening for a few hours; and I could work on Friday and

9 Saturday and try to assist as much as I could.

10       MR. BROWER:   Is this something that's going to be a

11 significant distraction for you during the course of this

12 trial, or do you feel confident that you will be able to set

13 the concern aside?

14       JUROR SHUPE:   I can separate.

15       MR. BROWER:   If you had your druthers, would you

16 druther [sic] not be on jury service . . . (inaudible)

17       JUROR SHUPE:   That's a difficult question.  I'm

18 happy to serve as my duty; but, I—you know, I do have some

19 pressing matters at my office, you know.  It would be a

20 hardship for my company if I wasn't there, but they will

21 survive; and I will pitch in as much as I can when I'm not

22 here.

23       MR. BROWER:   Thank you.

24       JUROR SHUPE:   Uhm-hmm.

25       THE COURT:   Mr. Svikis?

1    MR. SVIKIS:   Ms. Shupe, I missed the first part of
2  the—the bank robbery situ—A family member was killed?

3    JUROR SHUPE:   My first cousin.

4    MR. SVIKIS:   First cousin?

5    JUROR SHUPE:   Uhm-hmm.

6    MR. SVIKIS:   Are you aware of the location where
7  this is—where this crime is alleged to have occurred on
8  Stadium Drive?

9    JUROR SHUPE:   In general terms, but I don't go to
10  that part of town much.

11    MR. SVIKIS:   Okay.  Any family members on a police
12  department or anything?

13    JUROR SHUPE:   No.

14    MR. SVIKIS:   I have no further questions.

15    Your Honor, may we approach for a moment?

16    THE COURT:   Yes, sir.

17    (At 4:39 p.m., bench conference)

18    Peremptories are with the state.

19    MR. BROWER:   People pass, your Honor.

20    MR. SVIKIS:   I'd like to thank and excuse
21  Ms. Shupe.

22    THE COURT:   Ms. Shupe, you're excused.

23    Go ahead.

24    THE CLERK:   The court calls Kevin McMann for seat
25  number 13.

1     THE COURT:   Mr. McMann, did you hear all the

2  questions?

3     JUROR MCMANN:   Yes, sir.

4     THE COURT:   Do you know either of the lawyers here?

5     JUROR MCMANN:   No, sir.

6     THE COURT:   Do you know the defendant?

7     JUROR MCMANN:   No, sir.

8     THE COURT:   Did you recognize the names of any of

9  the witnesses?

10     JUROR MCMANN:   No.

11     THE COURT:   Do you recall reading or hearing

12  anything about this case?

13     JUROR MCMANN:   No.  I vaguely remember the incident

14  when it occurred, but I don't recall anything.

15     THE COURT:   Good.  If you're on the jury would you

16  set aside any recollection you might have and decide the case

17  on what you see and hear in this courtroom?

18     JUROR MCMANN:   Yes, I would.

19     THE COURT:   Have you ever sat on a jury?

20     JUROR MCMANN:   Yes, sir, ninth district court I was

21  on a jury.

22     THE COURT:   Okay.  Civil or criminal?

23     JUROR MCMANN:   Civil, I believe.  It was a traffic

24  case.

25     THE COURT:   Well, it might have been criminal.

177

1          JUROR MCMANN:   It was a long time ago.

2          THE COURT:   Okay.  Anything about that that you

3    feel might cause you to favor or disfavor one side or the

4    other?

5          JUROR MCMANN:   No, sir.

6          THE COURT:   Did you hear me explain the principles

7    regarding the presumption of innocence, the burden of proof,

8    and proof of guilt beyond a reasonable doubt?

9          JUROR MCMANN:   Yes, sir.

10         THE COURT:   Could you accept those and apply them

11   if you're on this jury?

12         JUROR MCMANN:   Yes.

13         THE COURT:   Any difficulty in accepting the rules

14   regarding the evaluation of police testimony?

15         JUROR MCMANN:   No.

16         THE COURT:   Is there anything about the nature of

17   this case that's such that you couldn't be fair?

18         JUROR MCMANN:   No.

19         THE COURT:   Is there anything that might be

20   important for us to know about your background or experiences

21   based on any other specific question that may have been asked

22   by myself or either of the lawyers during the course of this

23   day?

24         JUROR MCMANN:   My father's retired from Kalamazoo

25   public safety and currently works for Kalamazoo Township

178

1     . . . (inaudible)

2         THE COURT:   What did your father—He worked with the

3 public safety department?

4         JUROR MCMANN:   Right.  He was a detective for many

5 years and then cross-trained . . . (inaudible).  He's been

6 retired for ten years.

7         THE COURT:   Do you think that would affect how

8 you—being fair and impartial in deciding what you saw—this

9 case on what you see and hear?

10        JUROR MCMANN:   I'm sorry?

11        THE COURT:   Do you think that would affect you

12 being fair and impartial?

13        JUROR MCMANN:   It would not affect me.

14        THE COURT:   Let's say at the end of this trial you

15 didn't think the prosecution proved their case beyond a

16 reasonable doubt.  Would you hesitate to—if that's what you

17 truly felt—coming to that decision in this matter and

18 acquitting the defendant in light of your father's profession?

19        JUROR MCMANN:   . . . (inaudible)

20        THE COURT:   Likewise if it was, I take it you

21 wouldn't have a problem with that?

22        JUROR MCMANN:   . . . (inaudible)

23        THE COURT:   Mr. Brower?

24        MR. BROWER:   No questions, Judge.

25        THE COURT:   Mr. Svikis?

1       MR. SVIKIS:    No questions.

2       THE COURT:    Peremptories are with you, Mr. Brower.

3       MR. BROWER:    People pass, your Honor.

4       THE COURT:    Mr. Svikis?

5       MR. SVIKIS:    We're satisfied, your Honor.

6       THE COURT:    If you 14 will please stand you'll be

7   sworn as the jury in this case.

8       THE CLERK:    Please raise your right hand.  Do each

9   of you solemnly swear or affirm that in this case now before

10  the court you will justly decide the questions submitted to

11  you; that unless you are discharged by the Court from further

12  deliberation you will render a true verdict and that you will

13  render your verdict only on the evidence introduced and in

14  accordance with the instructions of the Court, so help you

15  God?

16      THE JURY (in unison):    (Mixed affirmative

17  responses)

18      THE CLERK:    Thank you.

19      THE COURT:    I guess the rest of the jury panel is

20  excused; is that correct?

21      THE CLERK:    Yes.

22      THE COURT:    All right.  And as I—

23      Do they have to report?

24      THE CLERK:    No, they are finished.

25      THE COURT:    All right.  Your service to the county

1    and the court is—is completed at this point.

2              You can be seated.

3              (At 4:44 p.m., balance of jury panel excused)

4              I'm going to give you a few procedural instructions

5    at this time, and then we're going to go home and we'll start

6    anew tomorrow morning.  But I think it's important that you

7    hear these things now 'cause it gives you some idea what's

8    going to happen and some of the things that—in respect to your

9    conduct during this trial; and the lawyers, how they—the

10   lawyers and the witnesses are to conduct themselves so that we

11   can proceed to have this case go through to completion and a

12   verdict.

13             Okay.  The trial's going to follow this procedure.

14   First, the prosecutor will make an opening statement, where

15   he's going to give you his theories about this case.  The

16   defendant's lawyer doesn't have to make an opening statement,

17   but he may make one after the prosecutor makes his or he may

18   wait until a later point in the trial.  Opening statements are

19   not evidence.  They're only meant to help you understand how

20   each side views this case.

21             After opening statements, the prosecutor presents

22   his evidence.  The prosecutor may call witnesses to testify

23   and may show you exhibits like documents or objects.  The

24   defendant's lawyer has the right to cross-examine the

25   prosecutor's witnesses.

                            181

1        After the prosecutor has presented all of his

2   evidence, the defendant's attorney may also offer evidence,

3   but keep in mind he does not have to do so.  By law, the

4   defendant does not have to prove his innocence or to produce

5   any evidence.  If the defense does call any witnesses, the

6   prosecutor has the right to cross-examine them.  The

7   prosecutor may also call witnesses to contradict the testimony

8   of the defense witnesses.

9        After all of the evidence has been presented to you,

10  the prosecutor and the defendant's lawyer will make their

11  closing arguments.  However, like the opening statements,

12  closing arguments are not evidence.  They're only meant to

13  help you understand the evidence and the way each side sees

14  the case.  You must base your verdict only on the evidence.

15       My responsibility as judge during the course of this

16  trial is to make sure that this trial is run fairly and

17  efficiently, to make decisions about the evidence, and to

18  instruct you about the law that applies to this case.  You

19  must take the law as I give it to you.  Nothing I say is meant

20  to reflect my own opinions about the facts of the case.  As

21  jurors, you are the ones who will decide this case.

22       Your responsibility as jurors is to decide what the

23  facts of the case are.  This is your job and no one else's.

24  You must think about all of the evidence and all of the

25  testimony and then decide what each piece of evidence means

182

and how important you think that it is.  This includes how much you believe what each of the witnesses said.  What you decide about any fact in this case is final.

When it's time for you to decide the case, you're only allowed to consider the evidence that was admitted in the case.  Evidence includes only the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I tell you to consider as evidence.

It is your job to decide what the facts of this case are, and you must decide which witnesses you believe and how important you think their testimony is.  You do not have to accept or reject everything a witness says to you.  As jurors you are free to accept or believe all, none, or part of any person's testimony.

In deciding which testimony you believe, you should rely on your own common sense and everyday experience.  However, in deciding whether you believe a witness's testimony, you must set aside any bias or prejudice that you may have that's based on race, gender, or national origin of the witness.

There is no fixed set of rules for judging whether you believe a witness, but it might help you to think about these questions:

Was the witness able to see or hear clearly?

How long was the witness watching or listening?

183

1       Was there anything else going on that might have

2  distracted the witness?

3       Does the witness seem to have a good memory?

4       How does the witness look and act while testifying?

5       Does the witness seem to be making an effort—an

6  honest effort to tell the truth, or do—or does the witness

7  seem to evade questions and argue with the lawyers?

8       Does the witness's age or maturity affect how you

9  judge his or her testimony?

10      Does the witness have any bias or prejudice or any

11 personal interest in how the case is decided?

12      Have there been any promises, threats, suggestions,

13 or other influences that affect how the witness testifies?

14      In general, does the witness have any special reason

15 to tell the truth or any special reason to lie?

16      All in all, how reasonable does the witness's

17 testimony seem when you think about all of the other evidence

18 in the case?

19      The questions that the lawyers ask of witnesses are

20 not evidence.  Only the answers are—are evidence, so you

21 shouldn't speculate or think that something is true just

22 because one or both of these lawyers ask or assumes

23 questions—ask questions that assumes or suggest that it is.

24      Now it's possible during the trial that I'll be

25 asking some of the witnesses questions myself.  If that should

184

1   occur, such questioning on my part is not meant to reflect my

2   opinion about the evidence.  If I ask questions, my only

3   reason would be to ask about things that I think might be

4   helpful to you in deciding the case and haven't been fully

5   explored.

6          During the trial the lawyers may object to certain

7   questions or statements made by the other attorneys or

8   witnesses.  If that should happen, I will rule on these

9   objections according to the law.  My rulings for or against

10  one side or the other are not meant to reflect my opinion

11  about the facts of the case.

12         Sometimes the lawyers and I will have to take up

13  matters that—outside of your hearing.  Also, while you're in

14  the jury room I may have to take care of other cases that have

15  nothing to do with this case.  If that should happen, please

16  pay no attention to such interruptions.

17         Now during this trial you must not discuss this case

18  with anyone, including members of your family or friends.  You

19  must not even talk to each other about it until the time comes

20  for you to decide the case; that is, at the very end after

21  you've heard all of the evidence, you've heard closing

22  arguments, and you've heard my final instructions.  That is

23  the first time it's permissible for you to discuss the case;

24  and then it is required that you only discuss it amongst

25  yourselves only in the jury room when you're all present.

                                    185

1    When the trial's over, you can discuss the case with whoever
2    you please; but not until then.
3          Now I'm going to call recesses during the course of
4    this trial.  Some of those recesses—like at noon and at the
5    end of the day—you're going to be allowed to leave the
6    courthouse here and go about your own affairs.  At other
7    times, you'll be sent back to the jury room.  During all of
8    those times, however, you are not to discuss the case with
9    anyone or let anyone discuss it in your presence or with you.
10   If anyone attempts to do that, tell that individual to stop,
11   and explain that as a juror you are not allowed to discuss the
12   case.  If that individual attempts to continue the discussion,
13   leave their presence at once and report the incident to me as
14   soon as you get back here in court.
15         You must not talk to the defendant, the lawyers, or
16   any of the witnesses about anything at all, even if it has
17   nothing to do with the case.  It's important that the only
18   information you get about this case is here in this courtroom
19   while you're acting as the jury and when the defendant and the
20   lawyers and I are present.
21         Now I don't know whether or not there's going to be
22   any news media or TV or newspaper reports about this case. If
23   there is, during this trial you are not to read, listen to, or
24   watch any news reports about this case.  Under the law, the
25   evidence you consider to decide this case must meet certain

1   criteria and standards.  For example, witnesses must swear to

2   tell the truth, and the lawyers must be able to cross-examine

3   them.  Because news reports do not meet those standards, they

4   could give you incorrect or misleading information that might

5   unfairly favor one side or the other.  So to be fair to both

6   sides you must follow these instructions.

7          Now also it's important that you know that you

8   do—you are not to go to the scene of this alleged crime.  If

9   it's necessary for any reason whatsoever, you'll go there

10  under court supervision.  We don't—and it's improper for you

11  to make any investigation of any kind about this case or to do

12  any of your own experiments or anything like that.

13         Now tomorrow when we come back here and we start

14  with—first thing we're going to do is have opening

15  statements—at least by the prosecutor.

16         I'm going to allow you to take notes during this

17  trial if you wish to, so you'll be provided writing material

18  for that purpose.  If you do take notes—First of all, I would

19  say that's only for those of you who want to.  If you don't

20  want to take notes, that's your business; you don't have to

21  take notes.  But if you do take notes, you should be careful

22  that it doesn't distract from you paying attention to all of

23  the evidence.

24         And then when you go to the jury room to decide on a

25  verdict you may use those notes to help you decide what

187

 1   happened in the courtroom.  If you do take notes, don't let

 2   anyone except other jurors see them.  Anytime you leave the

 3   courthouse, those notes will have to be left secured under the

 4   supervision of the court officer; but they'll be returned to

 5   you as soon as the court comes back into session.

 6          Also, I would tell you for those of you who are

 7   concerned about remembering all of these rules you hear about

 8   the law, I'm going to make sure that you're provided at the

 9   end of the trial when you deliberate a written—or printed copy

10   of the Court's final instructions so you'll have those with

11   you if you wish to consider them during the course of your

12   deliberations.

13          Now as you can see, we've selected 14 people.  We do

14   that because this case is going to go over several days; and,

15   under the constitution, it's required that in a case of this

16   nature 12 jurors deliberate and decide upon a verdict.  And so

17   to protect against some unforeseen circumstance arising that

18   it makes one or two jurors unable to continue, we select

19   14 people so that if something does happen we'll end up with

20   at least 12.

21          Now just because you're juror 13 and 14, don't

22   assume you are the alternates.  You very likely are not.  What

23   we do is if all 14 are still seated, we withdraw two names at

24   random, so that could be anybody.  So it's important that

25   everybody listen carefully to everything that's said and done

188

1    during the course of this trial.

2            As I told you during the voir dire examination,

3    possible penalty should not influence your decision in this

4    case.  It is my duty as judge to fix the penalties within the

5    limits provided for by law.

6            I may give you more instructions during this trial;

7    and then, as I've told you, at the end I'm going to give you

8    detailed instructions about the law.  You should consider all

9    of my instructions as a connected series.  Taken together,

10   they are the law that you are to follow in this case.

11           After you've heard all of the evidence and the

12   lawyers have made their closing arguments to you, as I've told

13   you you will be given detailed instructions about the rules of

14   law that apply to this case.  After that's been done, you'll

15   be sent to the jury room to decide on a verdict.

16           A verdict in a criminal case must be unanimous.

17   That means that every juror must agree on it, and it must

18   reflect the individual decision of each of you.

19           However, that being said, it's important that you

20   keep an open mind and not make a decision about anything in

21   this case until you've heard everything; that is, until I send

22   you to the jury room and say, members of the jury, start

23   deliberation.  Then is the time to start making decisions

24   about the matters that are in issue here.

25           So keep these matters in the forefront of your mind

                              189

1    during the course of the trial.

2            We'll stand in recess then until tomorrow morning at

3    9:00 a.m.

4            I want the jury—I understand there are going to be

5    other jury panelists, and I'd like this jury kept in a

6    separate room from the jury pool.

7            (At 5:01 p.m., off record discussion between Court

8            and clerk)

9            So then we'll stand in recess until 9:00 a.m.

10   tomorrow morning.  Thank you.

11           (At 5:01 p.m., proceedings adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25