261511

STATE OF MICHIGAN

9TH CIRCUIT COURT—TRIAL DIVISION

THE PEOPLE OF THE
STATE OF MICHIGAN

   v                                         Files No. C03000897 FC

PATRICK KEVIN MISHALL,

       Defendant.

Jury Trial — Volume IX of IX

Before Hon. George R. Corsiglia P12239, Circuit Judge
(Visiting Judge from 48th Circuit, Presiding by Assignment)
Kalamazoo, Michigan—Friday, June 25, 2004

APPEARANCES:

For the People:        Scott W. Brower P44951
                              Office of the Prosecuting Attorney
                              227 West Michigan Avenue
                              Kalamazoo, Michigan 49007
                              (269) 383-8900

For the Defendant:     Andis Svikis P36039
                              1803 Whites Road
                              Kalamazoo, Michigan 49008
                              (269) 349-7692

Recorded by:          Video recorded

Transcribed by:       Brenda K. Foley CER 4956
                              1400 Gull Road
                              Kalamazoo, Michigan 49048
                              (269) 385-6001
                               * * * * *



FILED
JUL 0 1 2005
9th JUDICIAL CIRCUIT
COUNTY OF KALAMAZOO
KALAMAZOO, MICHIGAN

ENTERED

```
 1                        TABLE OF CONTENTS
 2   WITNESSES                                                    PAGE
 3        None
 4
 5   EXHIBITS
 6        None
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                 (Tape No. B2004-037, 6-25-04, 15:36)
 1               Kalamazoo, Michigan
 2               Friday, June 25, 2004 - 3:36 p.m.
 3               THE CLERK:  The court calls the case of People
 4   versus Patrick Mishall, C03-0897 FC.
 5               Please state your appearance.
 6               MR. BROWER:  If it please the Court, your Honor,
 7   Assistant Prosecuting Attorney Scott Brower for the People of
 8   the State of Michigan.
 9               MR. SVIKIS:  Andis Svikis on behalf of
10   Patrick Mishall.
11               THE COURT:  All right.  The record, first of all,
12   should reflect that yesterday afternoon the jury asked to view
13   the testimony of various witnesses who appeared in this
14   matter.  They were permitted to do that.  And, as I understand
15   it, they did that all this morning for approximately three
16   hours and then approximately another two hours this afternoon.
17   Thereafter, they recommenced their deliberations.
18               A short time ago the Court received a note from the
19   jury foreman, Mr. Burnson, which reads as follows:
20               Your Honor, the jury has reviewed the video
21   testimony provided to us by the Court.  The jury discussed the
22   possibility if the review of the requested testimony video
23   changed their decision whether the defendant was guilty or not
24   guilty.  A vote was taken at this time.  The jury's vote of
25   guilty or not guilty has not changed since 24 June of this
```

```
 1  year in the a.m.
 2              Since that time we've taken five votes with no
 3  change.  It was stated by the jury that their decision was
 4  firm, that they would not change their decision.  The jury is
 5  deadlocked.
 6              As counsel knows—and by this time, the jury—as I
 7  told you yesterday the declaration of a deadlocked jury, which
 8  is the—which causes what's called a mistrial, is a very
 9  extreme remedy and can only be granted when all other options
10  are explored and exhausted.
11              I'm satisfied at this point that we've explored all
12  of those options.  I compliment you.  I know it's tedious, but
13  because of the serious of this matter it's important that
14  everyone is assured that a fair and honest and a verdict that
15  represents your individual considered judgment without force
16  or coercion can be reached.
17              And at this point, as I said, you've told me you had
18  the same vote five times, you've reviewed all of the evidence,
19  you had the opportunity to review those portions of the trial
20  videos that you requested, and you still can't come to a
21  conclusion.  So I'm satisfied that there is no other option
22  but to declare a mistrial at this point and determine that
23  you're deadlocked and that under those circumstances there's
24  demonstrable manifest necessity.
25              So I'm going to release you, declare the mistrial.
```

|   |   |
|---|---|
| 1 | So you're—You have no further responsibility to consider this |
| 2 | matter at this time.  And I want to thank you on behalf of the |
| 3 | court.  I know it's difficult.  Probably most of you, at |
| 4 | least, have never been put in that position.  For those of us |
| 5 | that work in the courts it's sometimes not easy, but it's |
| 6 | something we're accustomed to.  And I can understand how you |
| 7 | might not be able to reach an agreement in a case like this. |
| 8 | So I want to thank you for your service. |
| 9 |     You don't have to talk to anybody about this if you |
| 10 | don't want to.  It's entirely up to you.  However, it's |
| 11 | customary, regardless of the results, for the attorneys to |
| 12 | find out how you perceived this case and why you had the |
| 13 | difficulty; or, if you didn't have the difficulty, why you |
| 14 | came to a conclusion.  So if any of—The attorneys probably |
| 15 | want to ask you some questions, but that's entirely up to you |
| 16 | whether you talk to them. |
| 17 |     Any of you who would like to talk to them, |
| 18 | what—You're going to be taken back to the jury room to get |
| 19 | your personal belongings.  Any of you who are agreeable to |
| 20 | talking to Mr. Brower or Mr. Svikis, you're certainly free to |
| 21 | do so—And I'm sure they would appreciate it.—but you don't |
| 22 | have to.  It's your call entirely.  Nor do you have to talk to |
| 23 | anybody else about this case, you know.  That's—That's |
| 24 | entirely within your discretion. |
| 25 |     So if you don't have any problems with talking to |

1  those gentlemen, you're free to do so. But you're hereby
2  discharged from this matter. Thank you very much for your
3  time and consideration.
4      (At 3:44 p.m., jury excused)
5      Mr. Svikis, you indicated to the Court that you
6  wanted to address the Court regarding bond.
7      MR. SVIKIS:  Yes, your Honor.
8      Thank you, your Honor. I'd like the Court to
9  consider under MCR 6.004—speedy trial—a release of Mr. Mishall
10 on his personal recognizance. Mr. Mishall was arrested on
11 May 19th or 20 or 2003. The original trial date was January 6th
12 of 2004. No fault of the—can be attributed to the defendant.
13 The matter was then adjourned to June 14th of 2004.
14     As I read the rule that in these cases and given the
15 length of time between trial that personal recognizance is
16 required. In addition, there are any conditions possibly the
17 prosecutor and I can work out on those.
18     But the Court should also be aware that Mr. Mishall
19 has prior to these charges brought arising out of 1991, he had
20 no prior felonies, always was gainfully employed, was a
21 homeowner. After these tragic events he moved with some
22 family to Wisconsin. There he was gainfully employed and a
23 homeowner and, again, no felonies.
24     As the Court has noted, his family has been in the
25 courtroom from both Wisconsin and Michigan. And there's no

1  drug addictions—nothing that prevent him from returning.
2  So I'd ask that the Court release Mr. Mishall on
3  personal recognizance, be allowed to go back with his wife and
4  three-year-old daughter to Wisconsin. And he's cooperated
5  with the authorities throughout, and he would return when this
6  matter is rescheduled for a trial.
7  THE COURT: Mr. Brower?
8  MR. BROWER: Your Honor, I'd ask the Court to delay
9  a decision on that and allow the parties to provide the Court
10 with memorandum regarding their respective opinions. I know
11 that there are issues, including defense counsel's
12 participation in the selection of the trial date and so on
13 which may toll the time period and other issues.
14 I would also like to make some contacts to determine
15 what conditions—if the Court were inclined to grant a personal
16 recognizance bond—what conditions should be in place; but they
17 should, in fact, be in place before the Court makes a
18 decision. And that can't happen at this instant. I would ask
19 the Court for some time to prepare that.
20 THE COURT: Anything further, Mr.—
21 MR. SVIKIS: Yes. I can advise the Court that the
22 information it will be receiving is that with the Court's
23 permission Mr. Mishall would be returning to Weston,
24 Wisconsin; that the individuals that testified for the
25 prosecution that were—came from Wisconsin reside in the

1   La Crosse area. It's my understanding that the distance
2   between those areas—in addition to agreeing to no contact—is
3   at least three and a half to four hours in travel time. So
4   there wouldn't be any inadvertent contact with—with any of the
5   witnesses testifying for the prosecution that came from
6   Wisconsin if, in fact, he was allowed to leave the state.
7           THE COURT: Where—Where did you say defendant's
8   home is now?
9           MR. SVIKIS: The defendant's home now is in Weston,
10  Wisconsin.
11          THE COURT: Where—What part of Wisconsin is that?
12          MR. SVIKIS: It's near Wausau. Its relationship, I
13  understand from talking to family, it's the same relationship
14  as Kalamazoo is to Portage. It's about half the size of
15  Kalamazoo is my understanding for the—that geographic area.
16          THE COURT: What's the name of the—the city?
17  Weston?
18          MR. SVIKIS: Weston—W-e-s-t-o-n—Wisconsin, has a
19  zip code of 54476. It's in Marathon County.
20          And where the other witnesses were—were from on
21  behalf of the prosecution were from La Crosse, and that's in
22  the—
23          THE COURT: I'm familiar—
24          MR. SVIKIS: Right.
25          THE COURT: —with La Crosse, and I'm familiar with

|   |   |
|---|---|
| 1 | its location.  But I've never heard of Weston.  Is it larger |
| 2 | than—than La Crosse? |
| 3 | MR. SVIKIS:  No, it's smaller.  It appears to be a |
| 4 | bedroom community— |
| 5 | THE COURT:  Of what? |
| 6 | MR. SVIKIS:  —of Wausau—next to Wausau. |
| 7 | THE COURT:  Okay.  Well, I think we—I think the |
| 8 | defendant's entitled to—to have the Court act on your request |
| 9 | expeditiously.  What I'll—I'll give the parties ten days to |
| 10 | send a memorandum to the Court regarding what would be |
| 11 | appropriate under the circumstances, so that would be a week |
| 12 | from Monday.  Okay? |
| 13 | MR. SVIKIS:  Yes, your Honor. |
| 14 | THE COURT:  Send them to my office in Allegan, |
| 15 | please. |
| 16 | MR. SVIKIS:  Yes, your Honor. |
| 17 | THE COURT:  Well, maybe— |
| 18 | MR. BROWER:  Pardon me? |
| 19 | THE COURT:  File it—File it here, but send a |
| 20 | judge's copy to Allegan. |
| 21 | MR. SVIKIS:  So the file—It's been difficult |
| 22 | tracking the file on occasion, and so— |
| 23 | THE COURT:  Just send me a judge—at least send the |
| 24 | judge's copy to me in Allegan— |
| 25 | MR. SVIKIS:  Yes, your Honor. |

```
 1              THE COURT:    —would you, please.
 2              MR. SVIKIS:   Yes, your Honor.
 3              THE COURT:    That way I'll know.
 4         And I would urge counsel to confer with each other
 5    and see whether or not you can reach an agreement—maybe not on
 6    everything, but at least on parts of it.
 7              MR. SVIKIS:   Yes, your Honor.
 8              THE COURT:    Because I certainly don't know anything
 9    about this defendant or his record—if he has one or doesn't
10    have one—and I have to rely on you gentlemen to—to inform me
11    about that.
12         And, also, you know, I certainly would like you to
13    refer the Court in your memo to the applicable law that the
14    Court—at least you believe—the Court should be guided by.
15              MR. SVIKIS:   Yes, your Honor.
16              THE COURT:    Okay.  Thank you very much.
17         We'll stand in recess, then; and you can go, if
18    you'd like, and talk to any of the jurors who'd like to talk
19    to you.
20              MR. BROWER:   Thank you, your Honor.
21              (At 3:52 p.m., proceedings concluded)
22                              * * * * *
23
24
25
```

```
 1  STATE OF MICHIGAN    )
                         )
 2  COUNTY OF KALAMAZOO  )

 3
        I certify that this transcript, consisting of 12 pages, is a
 4
    complete, true, and correct transcript **to the best of my ability** of
 5
    the proceedings and testimony taken in this case on Monday,
 6
    June 14, 2004; Tuesday, June 15, 2004; Wednesday, June 16, 2004;
 7
    Thursday, June 17, 2004; Monday, June 21, 2004; Tuesday, June 22,
 8
    2004; Wednesday, June 23, 2004; Thursday, June 24, 2004; and
 9
    Friday, June 25, 2004.
10

11

12                             [signature: Brenda K. Foley]
13  June 29, 2005       _____
                        Brenda K. Foley    (CER-4956)
14                      Certified Electronic Recorder
                        1400 Gull Road
15                      Kalamazoo, Michigan  49048
16
17
18
19
20
21
22
23
24
25
```

724