261511

1    STATE OF MICHIGAN

2    9TH CIRCUIT COURT—TRIAL DIVISION

3

4    THE PEOPLE OF THE
     STATE OF MICHIGAN
5
          v                                    Files No. C03000897 FC
6
     PATRICK KEVIN MISHALL,
7
          Defendant.
8

9
               Jury Trial — Volume VIII of IX
10
        Before Hon. George R. Corsiglia P12239, Circuit Judge
11    (Visiting Judge from 48th Circuit, Presiding by Assignment)

12          Kalamazoo, Michigan—Thursday, June 24, 2004

13

14
     APPEARANCES:
15
     For the People:         Scott W. Brower P44951
16                           Office of the Prosecuting Attorney
                             227 West Michigan Avenue
17                           Kalamazoo, Michigan 49007
                             (269) 383-8900
18
     For the Defendant:      Andis Svikis P36039
19                           1803 Whites Road
                             Kalamazoo, Michigan 49008
20                           (269) 349-7692

21

22   Recorded by:            Video recorded

23   Transcribed by:         Brenda K. Foley CER 4956
                             1400 Gull Road
24                           Kalamazoo, Michigan 49048
                             (269) 385-6001
25                              * * * * *


FILED
JUL 0 1 2005
8th JUDICIAL CIRCUIT
COUNTY OF KALAMAZOO
KALAMAZOO, MICHIGAN

ENTERED

1                          TABLE OF CONTENTS

2    WITNESSES                                                      PAGE

3           None

4

5    EXHIBITS

6           None

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(Tape No. B2004-037, 6-24-04, 09:16)

1        Kalamazoo, Michigan

2        Thursday, June 24, 2004 - 9:16 a.m.

3        THE COURT:    The record should reflect that

4    Assistant Prosecutor Scott Brower is present, defense counsel

5    Andy—Andis Svikis, and the defendant with the jury.

6        Members of the jury, late yesterday afternoon you

7    indicated to me that you still were unable to reach a—a

8    verdict in this case.  At that time I recessed and asked you

9    to come back here.

10        I think I've said all that I—that needs to be said

11    and I'm sure you all understand the importance of this matter.

12    I've gone through the—the file in this matter and looked at

13    all of the issues that are before you, taken into

14    consideration the amount of time that you, in fact, have been

15    deliberating on it, and before I can make a determination that

16    there is no hope of reaching a verdict that I have to be

17    convinced that you, in fact, are hopelessly deadlocked.

18        And I looked at the fact that you have been

19    deliberating on this matter for approximately 15 hours, and I

20    cannot come to that conclusion at this time.

21        So I'm going to ask you to return to the jury room

22    and resume your deliberations in the hope that after further

23    discussion you're able to reach a verdict.

24        I'd ask you to take a fresh look at what your

25    positions have been and keep in—but keep in mind what I've

1    told you in the past in respect to how you should conduct your

2    deliberations. I'd ask you to all reevaluate your positions,

3    consult with each other and try to reach an agreement if you

4    can do it without violating your own judgment. As you know,

5    to return a verdict you all must agree and that verdict must

6    represent the judgment of each of you.

7    So I'd ask you that as you continue your

8    deliberations that you carefully and seriously consider the

9    views of your fellow jurors, talk things over in a spirit of

10    fairness and frankness. We understand that there's going to

11    be differences of opinion.

12    So since that is a natural consequence of having a

13    group deliberate and decide, it's extremely important that not

14    only do you express your opinions, but you also should back

15    that opinion up—if you have one—with the facts and reasons

16    upon which you base it because by reasoning the matter out,

17    it's often possible for all of you to agree.

18    When you continue your deliberations don't hesitate

19    to rethink your views, change your opinion if you decide it

20    was wrong. However, I would caution you that none of you

21    should ever give up your honest beliefs about the weight or

22    effect of the evidence only because of what your fellow jurors

23    think or only for the sake of reaching agreement.

24    So with that I'm going to ask you to go back to the

25    jury room and continue your deliberations to see if you can't

1    reach some agreement in this matter.

2                 (At 9:21 a.m., jury exits to resume deliberations)

3                 Any objections or further requests, Counsel?

4                 MR. BROWER:    No, your Honor.

5                 MR. SVIKIS:    No, your Honor.

6                 THE COURT:    We'll stand in recess.

7                 (At 9:21 a.m., court recessed)

8                 (At 3:51 p.m., proceedings reconvened)

9                 All right.    The record should reflect that the

10   jury's present—all members of the—the 12 final members of the

11   jury are present; defendant's present with his counsel

12   Mr. Andis Svikis; Assistant Prosecutor Scott Brower.

13                The record should further reflect that the jury

14   foreman has sent a note to the Court dated this date at

15   3:00 p.m. which states:

16                Your Honor, we understand the importance of this

17   case and the feelings of everyone involved.    We, the jury,

18   have exhausted all possible avenues and cannot come to a

19   unanimous decision.    That's signed by the foreman.

20                I believe that's David Burnson; is that correct?

21                Sir, before I can proceed any further, there are

22   several things that I must ask you at this point about this.

23   In your mind is the jury deadlocked at this point?

24                THE FOREPERSON:    Yes, your Honor, we are.

25                THE COURT:    How long would you say they've been

                                701

1    deadlocked?

2              THE FOREPERSON:    Approximately—close to 20 hours.

3              THE COURT:    Now without telling me how your voting

4    stands—I don't—I told you that before, so please don't do

5    that.—have there been any changes in the voting one way or the

6    other?

7              THE FOREPERSON:    Yes, your Honor.

8              THE COURT:    And when has that occurred?

9              THE FOREPERSON:    Today, your Honor.

10             THE COURT:    Until today, were there any changes

11   from you initial—

12             THE FOREPERSON:    Yesterday, there was, your Honor.

13             THE COURT:    Well, that being so I guess I have

14   difficulty in understanding why you think further

15   deliberations would be futile.  Is there a fundamental

16   difference that you feel can't be resolved?

17             THE FOREPERSON:    Yes, I do, your Honor.  The bottom

18   line—

19             THE COURT:    I don't want to get into numbers or

20   anything like that.

21             THE FOREPERSON:    That is my consensus and also all

22   the jurors' consensus.

23             THE COURT:    Let's take a recess.  I want the jury

24   to stay in place.

25             Could I see counsel in chambers.

                              702

1              (At 3:55 p.m., court recessed)

2              (At 4:01 p.m., proceedings reconvened)

3              Again, Mr. Foreman, how many—how many votes today

4     did the jury take?  Did you do it only once or have you done

5     it several times?  Again, without telling me your numerical

6     division.

7              THE FOREPERSON:   We have taken a tally four times

8     today, your Honor.

9              THE COURT:   Were there any changes from the first

10    time?

11             THE FOREPERSON:   Yes, your Honor.

12             THE COURT:   As I'm sure all of you can understand,

13    for this Court to make a determination that you truly are

14    deadlocked is a very extreme measure under our system of

15    justice.  And I'm compelled by the rule of law in this state

16    that I have to be—and everyone has to be—convinced that there

17    is no other option; that all options have been completely

18    explored and exhausted, and I'm not convinced to that extent

19    now.

20             I'm going to direct you to continue your

21    deliberations through tonight.

22             It's impossible for me to be here tomorrow morning.

23    I have commitments in my own circuit that I have to—I must

24    take care of.  I haven't got any alternative at this point.

25             But I'm going to ask you to come back here tomorrow

                                    703

1    and—if we don't reach a decision tonight—and be here, report

2    in at 9:00 o'clock tomorrow morning, and continue your

3    deliberations then.

4           I will take care of what I have to take care of in

5    my circuit in the morning and be here for the afternoon.  So

6    I'll leave instructions with the court officer for that

7    purpose.

8           But I remind you what I said before in respect to

9    your deliberations.  I have to direct you, I feel, at this

10   time to continue those.

11          You will—I will discharge you tonight at

12   5:00 o'clock.

13          Keep in mind what I've told you before about

14   discussing the case amongst yourselves or with anyone else or

15   having any contact with anyone or reading any news media

16   reports or listening to any or looking at any.

17          So you're directed to go back, continue your

18   deliberations until 5:00, report here tomorrow morning at

19   9:00.  And I will make myself available sometime after noon so

20   that if there is anything the Court has to address I can do it

21   at that time.

22          We'll stand in recess until then.

23              (At 4:05 p.m., jury exits courtroom to resume

24              deliberations)

25              Anything for the record, Mr. Svikis?

704

1    MR. SVIKIS:   No, your Honor.

2    THE COURT:   Mr. Brower?

3    MR. BROWER:   No, your Honor.

4    THE COURT:   We'll stand in recess.

5    (At 4:06 p.m., court recessed)

6    (At 4:34 p.m., proceedings reconvened)

7    The jury has requested that they be permitted to

8    either have a transcript or a video of the entire trial.  I

9    can't give you the entire trial because there are parts of the

10   trial you can't see.  They took place outside of your presence

11   and had to do with procedural or evidentiary legal questions.

12   So that is—Whether it be a transcript or a video I can't do

13   that.

14   I can give you if you could tell us specifically if

15   there are particular witnesses that you'd like to review their

16   testimony, we can do that for you.  I can have the court

17   officer get the videos and from the logs that were kept let

18   you view and listen to that testimony in the jury room.

19   So if you want to take this afternoon to let us know

20   who those people might be we could—yet this afternoon—we could

21   this evening and in the morning get the tapes ready and set up

22   the equipment so that you could look at that.

23   So I guess the answer is, no, I can't give you the

24   whole trial 'cause there are parts that are not permissible

25   for you to view.  But if you can tell me specifically what

705

1    witnesses you would like to have a review of their testimony I

2    can do that for you.  Okay?

3              We'll stand in recess.

4              So why don't you do that tonight and see if we can't

5    get that together.

6              (At 4:36 p.m., jury exits courtroom to resume

7              deliberations)

8              Anything further?

9         MR. SVIKIS:  Yes, I do, your Honor.

10        THE COURT:  Go ahead.

11        MR. SVIKIS:  Thank you.

12        THE COURT:  Be seated.

13        MR. SVIKIS:  Your Honor, at this time I—I would

14   like to ask the Court to direct a mistrial.  We've had three

15   notes from the jurors that haven't substantially changed in

16   two and a half days that they are hung and no—and unable to

17   make a—make a decision and firmly—firmly in place,

18   notwithstanding a possible switching of some votes which, of

19   course, we do not know.

20             The second thing is I would object to any videotape

21   replaying because it does not accurately reproduce the

22   witnesses' testimony but provides and emphasizes views the

23   jurors did not focus on during—during the testimony.

24             This replaying of the videotape, I understand, is

25   within the discretion of the Court.  However, certain other

706

1  courts have viewed this matter and are—have rendered an

2  opinion that this unduly places emphasis on testimony that's

3  considered a second—second time; that the videotape does not

4  duplicate the perspective view of the jurors during trial. A

5  videotape consists of a series of perspectives moving between

6  different trial participants, may focus on things the jurors

7  had not considered during trial. This alters the—an

8  individual juror's perspective during replay, and the juror's

9  attention is captured by the camera's focus rather than

10  directed by the juror's focus. In essence, the jury gets a

11  different view of the trial. While this may provide a more

12  faithful record in some respects, it may also heighten

13  elements disregarded by jurors during the trial. To the

14  extent the videotape represents a change in the media, the

15  change may alter the intuitive clues allowing the jurors to

16  determine credibility.

17  There are—Some of that verbage that I read comes

18  from a number of states—not Michigan. One is

19  *State* v *Koontz*—K-o-o-n-t-z, 41 P3d 475—I believe it's

20  Washington.—(2002).

21  And also from *U.S.* v *Montgomery*, 150 F3d 983,

22  999—It's California.—(1990) and (1998).

23  So there is support in other states, notwithstanding

24  that this is the discretion with the Court; and I would ask

25  the Court not to allow a second viewing of the—of any of the

707

1    videotapes.  Thank you.

2              THE COURT:  Mr. Brower?

3              MR. BROWER:  Your Honor, regarding the first

4    matter, I believe the Court was compelled to make the inquiry

5    it did regarding whether or not, in effect, there had been

6    any—any changes during their deliberations.  And in light of

7    the fact that the foreman acknowledged that there had been

8    both yesterday and today, the only reasonable conclusion is is

9    that they are, in spite of their representation in the letter,

10   that they were not deadlocked.

11             The inquiry was proper.  And in light of their

12   answers, the decision to send them back to continue

13   deliberations is also proper.

14             Regarding the videotape, your Honor, it is People's

15   position that viewing the tape of the witness' testimony is

16   more accurate than a transcript would be in that it does

17   accurately depict intonation and emphasis and the way that the

18   words are expressed that a transcript cannot.  And I ask the

19   Court to exercise its discretion and allow them to view a copy

20   of the taped witness statements.

21             THE COURT:  Well, I think there's a variety of

22   interpretations in respect to a jury view of a videotape.  Now

23   I know at one time in the state of Kentucky the videotape was

24   the official record of the trial court.  And that was the only

25   record.  I don't know if that's true today, but I know at one

1    time within the last decade that was.  And that was the only

2    record sent to the appellate courts.

3         That may not be true in other states, but I'm not

4    aware of that.  In this state we have an official court

5    recorder or reporter transcribe that tape.

6         So it may be true that the camera gives the jury

7    maybe a different perspective than what the jury saw in

8    respect to the video . . . (inaudible).  That's not true in

9    respect to the—the audio portion.  It would seem to the Court

10   that that—if it is audible and not garbled it would be more

11   accurate necessarily than somebody listening to the tape and

12   interpreting what they hear.  That's subject to a

13   misunderstanding of what they heard or, frankly, typographical

14   errors.  So I suppose, you know, that debate will never end.

15        I think it's appropriate to—if the jury can tell the

16   Court what particular areas and witnesses that they're

17   concerned with to allow them to—to view those.  And I don't

18   see how it more emphasizes if they're provided a video or is

19   subject to less discrepancies or more discrepancies than a

20   written transcript—So—or that it overly emphasizes one side or

21   the other.  At this point we don't even know who they want to

22   see—So—or listen to.  So I'm not ready to jump to that

23   conclusion.

24        But, apparently, there are some disagreements.

25   Maybe one of the jurors misunderstood what was said, took the

709

1    wrong note and let them—letting them view that tape, I think,

2    can clarify and possibly have them reach a conclusion in this

3    matter that will finally end at least the trial portion of the

4    case.

5           So your motion's noted, preserved for the record,

6    and denied.

7           MR. SVIKIS:   Thank you, your Honor.

8           (At 4:45 p.m., court recessed)

9           (At 4:58 p.m., proceedings reconvened)

10          THE COURT:   All right.   The record should reflect

11   that the jury's present, Assistant Prosecutor Brower is

12   present, defendant's present, and Defense Attorney Svikis is

13   present.

14          The jury has requested the testimony of 16 witnesses

15   who appeared in this matter, and I'll put them—I'll read them

16   into the record.

17          It's Brinkman, Humphries, Vasaris, Petersen, Hatter,

18   Grace, Newburry, Jilek, Askren, Sila, Grubius, Dahl,

19   Handlogten, Sordahl, Anderson, and the defendant.

20          We're going to get those in order for you so that

21   they'll be available in the morning.   The protocol or the

22   procedure we'll follow is that the court officer will have set

23   up for you a video monitor, and she will play the testimony of

24   those various witnesses to make sure that you don't get into

25   parts that you're not supposed to be exposed to.

1    Do not discuss anything in her presence. It would

2    be preferable that you go from one witness after another that

3    I've just named; and if you need to, you know, make notes—And

4    you're perfectly free to do that.—while you're viewing that.

5    If you feel you absolutely have to say something or

6    point something out, ask the—the court officer to leave.

7    She'll have to leave and take the tape with her. And then

8    when you're done with whatever discussion you have, tell her

9    to come back in and continue.

10    But that's the protocol I want followed to ensure,

11    first of all, the sanctity of the secrecy of your

12    deliberations. It's—Even if you don't care if she's present,

13    the law does; and so—That's to preserve the whole system—the

14    inviolate secrecy of the jury deliberations. So it's

15    absolutely necessary that you do that.

16    So then we'll stand—I'd ask you all to be back here

17    at 9:00 o'clock tomorrow morning, and we'll continue at that

18    time. And we'll have this all set up for you.

19    Thank you.

20    (At 5:01 p.m., jury exits courtroom)

21    Anything further, Counsel?

22    MR. SVIKIS: One thing. Is it—

23    THE COURT: Sit down. You may be seated.

24    MR. SVIKIS: There—We have—And I don't know really

25    the question. I don't really know the answer. But I just

1    want to bring to the Court's attention that we have two other

2    jurors that are still on call, and I—And I don't know how it

3    affects them, if at all.  It may be moot.  Should something

4    happen to one of these jurors—That's—I'm just bringing that to

5    the Court's attention.—it occurred to me that they would be

6    seeing something different than if we had to bring in another

7    juror.  But I don't—I can't formulate that into a question,

8    but it's—I should bring it to everybody's attention now if

9    there's something to do about that.  Thank you.

10           THE COURT:   Well, the protocol and procedure if for

11   some reason we had to bring in one of the alternates who are

12   still on call, you start your deliberations anew.  You start

13   all over again.  It's not a continuation.

14           Now what the realities of that are, I'm not quite

15   sure.  This is a new procedure that I think has just come

16   about this year; isn't that correct?

17           MR. BROWER:   I believe, yes.

18           THE COURT:   So that's what the rule provides for,

19   and that's what—Apparently, that's not a new system.  It's new

20   to the state of Michigan, but I believe that other

21   jurisdictions have followed that type of thing for quite a few

22   years.  I think that's done in the federal courts, as a matter

23   of fact.

24           So, apparently, other jurisdictions are satisfied

25   that that's a workable solution.  So I guess whatever concern

712

1    you have about that is on the record, Mr. Svikis.

2              MR. SVIKIS:    Thank you, your Honor.

3              THE COURT:    That's all I can tell you.

4              So we'll stand in recess then for the jury's

5    purposes until . . . (tape stopped prior to Court completing

6    sentence)

7              (At 5:04 p.m., proceedings adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25