UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PATRICK KEVIN MISHALL,

        Petitioner,

v.                                               Case Number 07-14080
                                                 Honorable Thomas L. Ludington

MILLICENT WARREN,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION,
DENYING PETITIONER'S MOTION FOR APPOINTMENT OF A NEXT FRIEND,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Patrick Kevin Mishall, presently confined at the Thumb Correctional Facility in Lapeer, Michigan, has filed a pro se application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of first-degree murder, armed robbery, and possession of a firearm during the commission of a felony in Kalamazoo, Michigan. He was sentenced to two years in prison for the felony firearm conviction, followed by life imprisonment for the murder and armed robbery. He alleges that he is incarcerated in violation of his constitutional right to due process, and he seeks appointment of a fellow inmate to assist him with the proceedings in this case. Respondent Millicent Warren has filed an answer to the habeas petition through counsel, asserting that Petitioner's habeas claim lacks merit. The Court agrees that Petitioner is not entitled to the relief he seeks. Consequently, the habeas petition and motion for appointment of a next friend will be denied.

                                                       I.

In 2003, Petitioner was charged with premeditated murder, felony murder, armed robbery,

and two counts of felony firearm. The charges arose from a 1991 murder and robbery in a Minute Market on Stadium Drive in Kalamazoo, Michigan. There was just one victim, Christine Dimmick, but the prosecutor proceeded against Petitioner on two theories: premeditated murder and murder during the commission of, or attempt to commit, a felony.

Petitioner's first trial ended in a mistrial because the jury was unable to reach a verdict. The evidence produced at his second trial in 2005 has been summarized by the state court as follows:

> At the time of the victim's death, she and defendant were employed by the same chain of stores and were engaged to be married. Several weeks before the murder, defendant told one of the store's regular customers that he suspected [the victim] was having an affair. He said on two occasions, "If I catch her, I'm going to kill her." In the same time frame, defendant told the store's night manager that he had a gun, could use it, and could hide it in the store in case of a robbery. After the murder, defendant admitted that he threatened to kill the victim for having an affair. Defendant also admitted being upset that the victim received a managerial promotion instead of him.
>
> The victim, responsible for opening the Stadium Drive store in Kalamazoo on the morning of her murder, deactivated the store's alarm at 6:25 a.m. Evidence showed that no one was in the store before the alarm was disarmed. Although the store regularly opened at 7:00 a.m., customers found the building unusually dark and locked at that time, indicating that the victim never opened the store. Later, police officers discovered the victim's body lying face down in the rear of the store. She suffered multiple fatal gunshot wounds. Some of the shots were fired at close range, and at least one shot was fired while she was lying on the ground. There was no evidence of a battle or defense wounds on her body. Several items, and over $2,000, taken from a locked safe and cash box, were missing from the premises. The store's owner testified that defendant was familiar with the money handling procedures and knew how to access the safe.
>
> Defendant reported driving the victim to the store on the morning of the murder, parking his car parallel to the building, and assisting the victim inside the store before returning immediately to his house. He testified that it took seven minutes to drive from the store to his house, and that he arrived back at his house before 7:00 a.m. A friend of defendant's, however, testified that defendant was not at home at 7:00 a.m. Additionally, a witness reported seeing a car similar to defendant's car parked parallel to the store four or five minutes before 7:00 a.m.
>
> Immediately after the murder, and during the years following, defendant reported

> contradictory information about his presence in front of the store, the discovery of the victim's body, his relationship with the victim, her alleged affairs, and his possession of a gun. Although several witnesses testified that defendant never owned a gun, and that he had a fear of guns, additional witnesses reported seeing him with a gun, or reported that he claimed to have one. One witness testified that, on the day of the victim's funeral, defendant actually asked him to dispose of a gun.
>
> Several witnesses testified to conversations with defendant regarding his role in the murder. Defendant's girlfriend asked him twice whether he killed the victim, and he responded with violence. The witness testified, "He had his hand against my neck up against the door choking me telling me he should do to me what he did to" the victim. Additionally, defendant's cellmate testified that defendant said that he could not be arrested for killing his girlfriend. Defendant continued, "they couldn't even prove what I done back then."

*People v. Mishall*, No. 261511, 2006 WL 2956220, at *1–2 (Mich. Ct. App. Oct. 17, 2006).

Petitioner presented several witnesses, who testified that he did not own or possess any guns and did not like or was afraid of guns. Petitioner testified that he did not shoot or kill Ms. Dimmick, that he did not rob the Minute Market, and that he never possessed a handgun. His defense was that he did not commit the crimes and was innocent. Defense counsel pointed out that there was no physical evidence linking Petitioner to the crime, and he argued to the jury that the circumstantial evidence was unconvincing. Counsel claimed that the testimony of critical prosecution witnesses was inconsistent and that the prosecution's case was constructed on hunches and suspicions.

On February 14, 2005, a Kalamazoo County Circuit Court jury found Petitioner guilty of premeditated murder, Mich. Comp. Laws § 750.316(1)(a), armed robbery, Mich. Comp. Laws § 750.529, and two counts of felony firearm, Mich. Comp. Laws § 750.227b. The trial court sentenced Petitioner to concurrent terms of two years in prison for the felony-firearm convictions, followed by life imprisonment for the murder and armed robbery convictions. The Michigan Court of Appeals affirmed Petitioner's convictions, and on January 29, 2007, the Michigan Supreme Court denied leave to appeal, *see People v. Mishall,* 726 N.W.2d 14 (Mich. 2007).

Petitioner filed his habeas corpus petition on September 27, 2007. His sole claim alleges that the evidence at trial was insufficient to sustain his convictions.

II.

Petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of his claim on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

III.

Petitioner alleges that there was insufficient evidence adduced at trial to support his convictions for murder, armed robbery, and felony firearm. The Michigan Court of Appeals held that, although there was no direct evidence implicating Petitioner, there was sufficient circumstantial evidence to enable a rational trier of fact to find him guilty of killing the victim with premeditation

and deliberation, of feloniously taking goods from her presence, and of committing these acts while in possession of a firearm.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship*,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson v. Louisiana,* 406 U.S. [356, 362 (1972)]. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The prosecution need not rule out every hypothesis except that of guilt, and a reviewing court must defer to the fact finder's resolution of conflicting inferences. *Id.* at 236. "[T]he Jackson inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

A.

Petitioner alleges first that there was insufficient evidence that he committed premeditated murder. The elements of first-degree, premeditated murder are: (1) the defendant killed the victim and (2) the killing was "willful, deliberate, and premeditated." *People v. Bowman*, 656 N.W.2d 835, 841 (Mich. Ct. App. 2002) (quoting Mich. Comp. Laws § 750.316(1)(a)). Premeditation may be inferred from the circumstances and "established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 486

N.W.2d 312, 318 (Mich. Ct. App. 1992) (internal and end citations omitted)

1.

On the issue of premeditation, deliberation, and intent, the Michigan Court of Appeals stated that

> the victim's manner of death indicates that her murder was intentional, premeditated, and deliberate. Specifically, she suffered multiple, fatal gunshot wounds at close range, she was shot at least once while lying on the ground, her body remained in the same place after the shooting, and there were no wounds suggesting that a fight or struggle occurred. See *People v. Bowman*, 254 Mich. App. 142, 151-152; 656 N.W.2d 835 (2002) (stating that evidence of the victim's manner of death may be used to establish premeditation). Moreover, before her death, defendant was angry with the victim because of a promotion, suspected her to be unfaithful, and threatened to kill her. These facts are also relevant to the question of intent, motive, and premeditation. See *People v. Fisher*, 449 Mich. 441, 452-453; 537 N.W.2d 577 (1995) (holding that marital discord may be motive for murder, or may serve as circumstantial evidence of premeditation and deliberation; evidence of prior threats may be relevant to intent and motive).

*Mishall*, 2006 WL 2956220, at *2.

On the issue of the perpetrator's identity, the Court of Appeals said,

> [n]ot only did the evidence establish premeditation, it established defendant's identity as the perpetrator of the crimes. Defendant admitted to being alone with the victim at the scene of the crime the morning of the murder. Based on the sequence of events that morning, a reasonable inference could be drawn that defendant was in the store at the time the murder took place. The store did not open on schedule at 7:00 a.m., and defendant was inside the store before that time. He was with the victim. His car was outside four or five minutes before 7:00 a.m., and he lied about being home at 7:00 a.m. Moreover, according to the store's security company, no one was inside the building before the victim and defendant entered at 6:25 a.m., and defendant testified that the victim would not have granted an unidentified person access to the store before it opened. Although mere presence at the scene of the crime, at the time the crime occurred, is insufficient to establish commission of the crime, evidence of opportunity and presence at the crime scene may contribute to a finding of guilt. *People v. Barrera*, 451 Mich. 261, 295; 547 N.W.2d 280 (1996); *Bowman*, *supra* at 151.
>
> On the day of the victim's funeral, defendant asked a friend to dispose of his gun. Although mere possession of a gun does not constitute substantive evidence of guilt,

> the fact that defendant attempted to dispose of a gun, within days of the murder, supported a reasonable inference that defendant possessed the murder weapon and did not want it to be recovered. See *People v. Casper*, 25 Mich. App. 1, 7; 180 N.W.2d 906 (1970) (holding that attempting to dispose of the murder weapon contributes to a finding of guilt).
>
> After the murder, defendant made incriminating statements to several witnesses. According to a detective's testimony, defendant referred to the victim's being shot, although no one informed defendant of the manner of death before defendant made his comment. There was no credible evidence to support that defendant received this information elsewhere. Thus, a reasonable trier of fact could infer that defendant possessed this knowledge because of his identity as the killer. See *Bowman, supra* at 151 (stating that knowledge of the details of a crime may serve as incriminating evidence). Defendant also voluntarily informed the same detective that he threatened to kill the victim. See *Schollaert*, *supra* at 170.
>
> When defendant's subsequent girlfriend confronted him about his identity as the killer, he threatened to "do" to her what he did to the victim. Likewise, defendant's statements to his cellmate [that they could not prove what he did back then] were incriminating and inferred that he committed the murder.

*Id*., 2006 WL 2956220, at *3 (alteration added).

> The Court of Appeals went on to say that
>
> the sequence of events on the morning of the murder, and defendant's presence at the scene of the crime, demonstrates that he not only had the opportunity to kill the victim, but that he did so. Evidence that he attempted to dispose of a gun the day of the victim's funeral, possessed special knowledge of the details of the crime, and made more than one incriminating statement, supports his identity as the killer. Finally, the victim's manner of death, and the fact that defendant was angry with the victim, believed she was having an affair, and threatened to kill her, support the conclusion that defendant committed the murder with premeditation and deliberation and had a motive for doing so.

*Id*. The Court of Appeals concluded that "the evidence, taken together, is sufficient for a rational trier of fact to find defendant guilty of premeditated first-degree murder." *Id*.

2.

Petitioner points out that there was no direct evidence linking him to the crimes. However, "circumstantial evidence and reasonable inferences arising from that evidence can constitute

-7-

satisfactory proof of the elements of a crime." *People v. Lee*, 622 N.W.2d 71, 75 (Mich. Ct. App. 2000).

Petitioner also alleges that the state court's reliance on circumstantial evidence was flawed. For example, he states that evidence of discord in his relationship with Ms. Dimmick does not mean that he robbed and killed her and that his mere presence at the scene of the crime at the time the crime occurred does not establish that he committed the crime. He states that his disappointment in not getting a job promotion was not a sufficient motive for murder and that motive alone is not a basis to convict in any event. Petitioner goes on to say that evidence of his possession of a gun is not proof that he used the gun to commit a homicide, and, even if he lied about possessing a gun, that is not unusual.

While these arguments are true, the Court must view the evidence in the light most favorable to the prosecution and defer to the jury's resolution of conflicting inferences. *Jackson*, 443 U.S. at 236. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

3.

Petitioner further alleges that the prosecution based its case on mere speculation and that the state court relied on unreasonable inferences, which are insufficient to support his murder conviction. To refute the various inferences made by the state court, Petitioner alleges first that the reason he knew the victim was shot was because he acquired the information from his boss, Wayne Tiller, who overheard a police officer tell Tiller's wife about the shooting. This explanation is inconsistent with what Petitioner told a detective. Petitioner informed Detective James Grace that he learned about the shooting from other detectives. (Tr. Feb. 8, 2005, at 357.)

As for Christine Newburry's testimony that Petitioner choked her and said that he should do to her what he did to Ms. Dimmick, Petitioner claims that the remark is ambiguous and that he actually said, "I should do to you like *everyone thinks* I did to Chris [Dimmick]." Ms. Newburry denied that Petitioner used the words "like everyone thinks," (Tr. Feb. 9, 2005, at 493-95), but the detective who interviewed her admitted that Ms. Newburry could have reported Petitioner as saying, "Do you want me to do to you like everybody thinks I did to Chris." (*Id.* at 567.) Thus, the jury was made aware of the ambiguity of the remark. The jury also was made aware of Petitioner's interpretation of the remark: that he meant to say to Ms. Newburry, "Do you want me to physically fight with you like I used to fight with Chris (Dimmick)?" (*Id.* at 641-42.)

Petitioner claims that, when he told Ontario Lowery that the authorities could not prove what he did back then, he meant to say that the police could not prove what he did because he did nothing. While this is one interpretation of his comment, the jury was free to conclude that Petitioner meant to say that the police could not prove that he murdered Ms. Dimmick.

Petitioner argues next that the Court should not rely on his past statements that he would kill Ms. Dimmick if he ever caught her with another man, because there was no evidence that he ever caught her with another man. He admitted at trial, however, that he had heard accusations about Ms. Dimmick and suspected that she was seeing other people. He also testified that the accusations and suspicions made him feel angry. (*Id.* at 620-21 and 636.) Furthermore, the nature of his relationship with Ms. Dimmick and testimony that he made threats against her was evidence of premeditation. *Schollaert*, 486 N.W.2d at 318.

Petitioner contends that the Court should not rely on Bart Munson's testimony that he (Petitioner) was not home at 7:00 a.m. on the day of the murder because it is plausible that he and

Bart missed each other by a matter of minutes. While that may be true, it is also true that a witness saw a car matching the description of Petitioner's car outside the Minute Market three to five minutes before 7:00 a.m. on the day of the murder. (Tr. Feb. 8, 2005, at 328-32.) There was other evidence that Petitioner asked Bart's brother Brent to get rid of a gun for him. Brent testified that Petitioner had said he wanted to get rid of the gun because he was afraid he would hurt himself with it, but when Brent suggested that Petitioner take the gun to the police, Petitioner told Brent to forget that he asked him to get rid of the gun. (Tr. Feb. 8, 2005, at 365-66.)

Even if the Court were to conclude that Petitioner's refutations are plausible, the evidence, when taken as a whole, supports the prosecution's theory that Petitioner killed Ms. Dimmick. The murder verdict was based on competent circumstantial evidence and reasonable inferences from that evidence.

B.

Petitioner also challenges the sufficiency of the evidence supporting his armed robbery and felony firearm convictions. "The elements of armed robbery are: (1) an assault and (2) a felonious taking of property from the victim's presence or person (3) while the defendant is armed with a weapon." *People v. Smith*, 733 N.W.2d 351, 365 (Mich. 2007). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v. Avant*, 597 N.W.2d 864, 869 (Mich. Ct. App. 1999).

The only element in dispute here is the identity of the perpetrator. Petitioner claims that there was insufficient evidence that he was the person who robbed Ms. Dimmick at gunpoint, and therefore, his robbery and felony firearm convictions also must be vacated.

There was testimony that $2, 238 and other items were missing after the murder (Tr. Feb. 8, 2005, at 383, 386, & 389–90), and that no one could have been inside the Minute Market before the victim deactivated the alarm on the morning of her murder (*id*. at 448.) Furthermore, according to one store employee, Petitioner informed her that he possessed a gun, could hide the gun in the store, and could use it. Petitioner admitted at trial that he may have said that. (*Id*. at 415–16 and Tr. Feb. 9, 2005, at 630.) There was additional evidence that Petitioner had a habit of taking Ms. Dimmick to work in the morning and helping her to prepare the store for the day. (Tr. Feb. 9, 2005, at 468 & 479–80.) He, too, was an employee of the Minute Market chain, and he was familiar with the manager's responsibilities and the store's operation, including its security system. (*Id*. at 585–86, 615, 623–24 & 629.)

The jury could have inferred from all the evidence that Petitioner took the missing money and other items before or after the murder and while armed with a gun. Thus, the evidence was sufficient to find Petitioner guilty of armed robbery and felony firearm.

IV.

A rational juror, viewing the evidence in the light most favorable to the prosecution, could have concluded from the circumstantial evidence that Petitioner murdered Christine Dimmick, took money and other items from her presence while armed, and possessed a firearm during the murder and robbery. He had the opportunity, means, and motive to commit the murder and robbery, and his actions and statements before and after the incident implicated him in the crimes. Therefore, the evidence was sufficient to sustain Petitioner's convictions.

Even if the Court were to conclude that Petitioner's convictions were not supported by sufficient evidence, "the question would remain whether the [Michigan] Court of Appeals was

unreasonable in concluding otherwise." *Saxton v. Sheets,* 547 F.3d 597, 607 (6th Cir. 2008). Given the strength of the circumstantial evidence and the deference owed to the jury's resolution of conflicting inferences, the state court's conclusion—that the evidence was sufficient to support Petitioner's convictions—was objectively reasonable and neither contrary to, nor an unreasonable application of, *Jackson*. Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [Dkt. #1] is **DENIED**.

It is further **ORDERED** that Petitioner's motion for appointment of a fellow inmate as next friend to assist Petitioner with these proceedings is **DENIED** as moot and unnecessary. Petitioner adequately argued his sufficiency-of-the-evidence issue in his habeas petition and in his reply to Respondent's answer to the habeas petition, and the Court is closing this case as of today.

It is further **ORDERED** that a certificate of appealability is **DENIED** because reasonable jurists would not disagree with the Court's resolution of Petitioners claim, nor conclude that the issue warrants encouragement to proceed further. *Banks v. Dretke*, 540 U.S. 668, 674 (2004). Petitioner nevertheless may proceed *in forma pauperis* on appeal without further authorization because he was permitted to proceed *in forma pauperis* in this Court. Fed. R. App. P. 24(a)(3).

        s/Thomas L. Ludington
        THOMAS L. LUDINGTON
        United States District Judge

Dated: November 13, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 13, 2009.

s/Tracy A. Jacobs
TRACY A. JACOBS